11th Court of Appeals

 Eastland,
Texas                        

Opinion

 

Philip Malcolm Chandler and Ronda Chandler,

Individually and as Next Friends of Philip

Malcolm Chandler, Jr. and Jamie Renee
Chandler

 

Appellants

 

Vs.       No. 11-00-00332-CV B Appeal from Dallas County

 

Gene Messer Ford, Inc.; Gene Messer Ford of

Amarillo, Inc.; and Ford Motor Company

 

Appellees/Appellants

 

Vs.

 

Carrie Kinkler Smith

 

Appellee

 

 

This
appeal is from a summary judgment granted to Gene Messer Ford, Inc. and Gene
Messer Ford of Amarillo, Inc. (Gene Messer Ford) and Ford Motor Company (Ford)
in a suit arising out of an automobile collision.  We affirm in part and reverse and remand in part.

Background
Facts








Philip
Malcolm Chandler, Jr. was injured in May 1995 while riding in the front
passenger seat of his parents= Ford Aspire.  His father was
driving northbound on Western Drive in Amarillo.  Carrie Kinkler Smith, traveling southbound on Western, turned her
Buick LeSabre left in front of the oncoming Chandlers.  The smaller Aspire crashed into the side of
the Buick, and the Aspire=s front seat air bags deployed. 
The Chandlers=
daughter, Jamie Renee Chandler, was sitting in the back seat and wearing her
lap and shoulder belts.  Jamie and Mr.
Chandler, who also was properly belted, received only minor injuries.  Philip, seven years old, weighing
approximately 60-65 pounds, suffered a severe closed-head injury.  There is conflicting evidence on whether
Philip was properly belted; we will assume that he was.  The Chandlers claim that the passenger air
bag enhanced Philip=s
injuries, that Ford and Gene Messer Ford misrepresented the Aspire=s safety characteristics, and that Ford and
Gene Messer Ford failed to warn them of the possible risks to a child riding in
the front passenger seat.

The Ford
Aspire is a small car.  Mr. Chandler
said that he told the Gene Messer Ford salesman that he wanted to buy a small
car to save on gasoline but that his wife, Ronda, was opposed to small cars
because of her concern about the safety of their children.  He also told the salesman that he had been
looking at a Geo Metro and that he liked the Geo Metro a lot.  According to Chandler, the salesman informed
him that the Ford Aspire had dual air bags which the Geo Metro did not and
that, in the salesman=s
opinion, if Chandler was going to buy a small car, the Ford Aspire would be
safer for children because of the passenger side air bag.  Chandler and the salesman took the Aspire to
Ronda=s workplace for her approval.  The salesman assured Ronda of the safety of
the Aspire; and, based on the salesman=s assurances, the Chandlers purchased the Ford Aspire.

Philip
Malcolm Chandler and Ronda Chandler, individually and as next friends of Philip
Malcolm Chandler, Jr. and Jamie Renee Chandler, sued Smith for negligence.  They also sued Ford and Gene Messer Ford for
design and marketing defects under Section 402A of the Restatement (Second) of
Torts (1965); misrepresentations under Section 402B of the Restatement (Second)
of Torts (1965); negligence; and violations of the Texas Deceptive Trade
Practices-Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. ' 17.41 et seq. (Vernon 1987 & Pamph.
Supp. 2002), including breach of implied warranties.  Ford and Gene Messer Ford filed a cross-claim against Smith.  After discovery, Ford and Gene Messer Ford
sought a partial summary judgment on the Chandlers= causes of action for misrepresentations
under Section 402B, violations of the DTPA, and market defect under Section
402A.  Their motion for summary judgment
included a traditional motion under TEX.R.CIV.P. 166a(c) and a no-evidence
motion under TEX.R.CIV.P. 166a(i). 
After the trial court granted their requested partial summary judgment
without specifying the grounds, appellants nonsuited their remaining causes of
action for design defect and negligence. 
The trial court then dismissed Ford=s and Gene Messer Ford=s cross-claim against Smith, creating a final judgment from which the
Chandlers appealed.

 

 








Standard
of Review

A trial
court should grant a motion for summary judgment if the moving party
establishes that: (1) no genuine issue of material fact exists and (2) the
moving party is entitled to judgment as a matter of law.  Rule 166a(c); M.D. Anderson Hospital and
Tumor Institute v. Willrich, 28 S.W.3d 22, 23 (Tex.2000); Lear Siegler, Inc. v.
Perez, 819 S.W.2d 470, 471 (Tex.1991). 
Once the movant for a traditional summary judgment establishes his right
to a summary judgment, the non-movant must come forward with evidence or law
that precludes summary judgment.  City
of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678-79
(Tex.1979).  The question on appeal is
whether the summary judgment proof establishes as a matter of law that there is
no genuine issue of fact as to one or more of the essential elements of the
plaintiff=s cause of action.  Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828
(Tex.1970).  When reviewing a summary
judgment, we take as true evidence favorable to the non-movant and indulge
every reasonable inference and resolve any doubts in favor of the
non-movant.  M.D. Anderson Hospital and
Tumor Institute v. Willrich, supra at 23; Nixon v. Mr. Property Management
Company, Inc., 690 S.W.2d 546, 548-49 (Tex.1985).








A party
filing a no-evidence motion for summary judgment must specify the elements of a
cause of action upon which the non-movant bears the burden of proof but has no
evidence.  Rule 166a(i).  The non-movant must present some summary
judgment evidence that raises a genuine fact issue on the specifically
challenged elements.  Rule 166a(i);
McCombs v. Children=s
Medical Center of Dallas, 1 S.W.3d 256, 258 (Tex.App. B Texarkana 1999, pet=n den=d).  The appellate court reviews
evidence presented in response to a motion for a no-evidence summary judgment
in the same way it reviews evidence presented in response to a traditional
motion for summary judgment; it accepts as true evidence favorable to the
non-movant and indulges every reasonable inference and resolves all doubts in
favor of the non-movant.  Hight v.
Dublin Veterinary Clinic, 22 S.W.3d 614, 619 (Tex.App. B Eastland 2000, pet=n den=d).  A no-evidence summary
judgment is improper if the non-movant presents more than a scintilla of
probative evidence to raise a genuine issue of material fact on the challenged
element.  McCombs v. Children=s Medical Center of Dallas, supra at
258.  More than a scintilla of evidence
exists when the evidence Arises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.@  Merrell Dow Pharmaceuticals,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. den=d, 523 U.S. 1119 (1998).

Because
the trial court=s order granting summary judgment did not
specify the ground or grounds relied on for its ruling, we will affirm if any
of Ford=s and Gene Messer Ford=s theories have merit.  Carr v. Brasher, 776 S.W.2d 567, 569
(Tex.1989).

Restatement
of Torts (Second) Section 402B

In their
summary judgment motion, Ford and Gene Messer Ford asserted that appellants had
presented no evidence of a misrepresentation under Section 402B of the
Restatement (Second) of Torts.  Texas
adopted Section 402B in Crocker v. Winthrop Laboratories, Division of Sterling
Drug, Inc., 514 S.W.2d 429, 431 (Tex.1974). 
Section 402B provides:

One
engaged in the business of selling chattels who, by advertising, labels, or
otherwise, makes to the public a misrepresentation of a material fact
concerning the character or quality of a chattel sold by him is subject to
liability for physical harm to a consumer of the chattel caused by justifiable
reliance upon the misrepresentation, even though

 

(a) it is
not made fraudulently or negligently, and

 

(b) the
consumer has not bought the chattel from or entered into any contractual
relation with the seller.

 

Appellants
alleged that the salesman=s statements to them -- that dual air bags made the Aspire safer than a
Geo Metro and safer for children -- were misrepresentations within Section
402B.  Ford and Gene Messer Ford
asserted in their motion for summary judgment that Section 402B did not apply
because the salesman=s
alleged statements were not Apublic misrepresentations@ and the statements were simply his opinion or Asales talk.@  We agree that Section 402B
does not apply to private misrepresentations. 
Lewis & Lambert Metal Contractors, Inc. v. Jackson, 914 S.W.2d 584,
590 (Tex.App. B Dallas 1994), vacated per settlement,
938 S.W.2d 716 (Tex.1997); Rehler v. Beech Aircraft Corporation, 777 F.2d 1072,
1079 (5th Cir. 1985).  Section 402B
applies only to misrepresentations made to the public at large in the form of
advertising, labels, or similar broad forms of communication.  Section 402B, comment h, defines what Ato the public@ means:








h.  ATo the public.@  The rule stated in this Section is limited
to misrepresentations which are made by the seller to the public at large, in
order to induce purchase of the chattels sold, or are intended by the seller
to, and do, reach the public.  The form
of the representation is not important. 
It may be made by public advertising in newspapers or television, by
literature distributed to the public through dealers, by labels on the product
sold, or leaflets accompanying it, or in any other manner, whether it be oral
or written.

 

The Gene Messer Ford salesman=s alleged misrepresentations were not made to the public at large. 

We also find that the salesman=s statements were simply an expression of his opinion; they were not
misrepresentations of a material fact. 
See Section 402B, comment g. 
Even if the alleged statements were considered to be statements
concerning a material fact, there was no proof by the Chandlers that the
statements were misrepresentations.  The
Chandlers presented no evidence that the Aspire was not safer than the Geo
Metro, and they presented no evidence to show that Philip=s injuries were made worse by the air bag or
that the Aspire with dual air bags was not safer for children.   

Appellants argue that Ford=s advertisements, showing children riding in the front seat, coupled
with the owner=s manual and seat belts indicating that
children may ride in the front seat, were Section 402B misrepresentations.  We have reviewed the advertisements attached
to Chandler=s affidavit. 
We find that none of the advertisements provide a basis for a Section
402B claim.  The advertisements are
general statements about the safety benefits of dual air bags.  There is only one advertisement relating to
an Aspire, and it shows children running from the vehicle with the caption AStandard Dual Airbags.@  The
advertisement also states that the Aspire has features Ato protect your dreams@ and that it is Athe lowest priced car with standard dual air
bags.@  The
advertisements do not constitute Section 402B misrepresentations; they are
assertions of general safety and dependability.  Section 402B, comment g (statements of opinion or Aloose general praise of wares sold@ are not a representation of material fact);
James B. Sales, The Innocent Misrepresentation Doctrine: Strict Tort Liability
Under Section 402B, 16 HOUS. L. REV. 239, 259 (1979)(citing Jack
Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262 (Tex.1967).








  The combined effect of the advertising, the
Aspire=s owner=s guide, the seat belts, and the visor warning also does not amount to
a misrepresentation under Section 402B. 
The warning label on the sun visor stated that A[a]n inflating air bag can seriously injure
small children@ after stating that A[a]ir bags inflate with great force, faster
than the blink of an eye.@  The owner=s manual contained additional warnings and
instructions stating that children should be placed in the rear seat:

Warning: When possible, put children in the rear seat of your vehicle.  Accident statistics suggest that children
are safer when properly restrained in the rear seating positions than in the
front seating positions.

 

Finally,
appellants point out that Ford labeled the Aspire as a Ford even though it was
designed by Mazda and built by Kia. 
Because Chandler had determined that he would never purchase a vehicle
made by Kia, appellants contend that Ford=s labeling of the Aspire as a Ford was a misrepresentation under
Section 402B.  We disagree.  There is no evidence that Ford concealed the
fact that the Aspire was built by Kia. 
The Aspire is a Ford sold at Ford dealerships with a Ford warranty.  It is common knowledge that we live in a
global economy and that the manufacturing of automobiles and their parts is
often contracted to foreign companies.

The trial
court did not err in granting summary judgment to Ford and Gene Messer Ford on
appellants= Section 402B misrepresentation claims.

Deceptive
Trade Practices Act

The basic
elements of a DTPA action for failure to disclose material information and for
misrepresentations are:

(1) The plaintiff is a consumer;

 

(2) The defendant engaged in a false,
misleading, or deceptive act that is specifically enumerated in a subdivision
of Section 17.46(b); and

 

(3) The act constituted a producing cause of
the consumer=s damages.

 

TEX. BUS. & COM. CODE
ANN. ' 17.50(a)(1) (Vernon Pamph. Supp. 2002); Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex.1995).  Additional elements are required by the
various subdivisions of Section 17.46(b).

A.  Alleged Misrepresentations

Appellants
claim that the salesman=s statements and Ford=s advertising, which they claimed were misrepresentations under Section
402B, were also false, misleading, or deceptive acts or practices under Section
17.46(b)(5) of the DTPA because Ford and Gene Messer Ford were:

(5) representing that goods [the Aspire]
ha[d] sponsorship, approval, characteristics, ingredients, uses, benefits, or
quantities which [the Aspire did not have].








Appellants
had the burden of introducing evidence to demonstrate that the alleged
misrepresentations were false or misleading. 
Pennington v. Singleton, 606 S.W.2d 682, 687 (Tex.1980); Milt Ferguson
Motor Company v. Zeretzke, 827 S.W.2d 349, 355 (Tex.App. B San Antonio 1991, no writ).  In Pennington, for example, there was
evidence that the seller represented that a used boat was in excellent
condition when the boat actually had a cracked gear housing.  Similarly, there was a misrepresentation
under the DTPA in Milt Ferguson Motor Company when the dealership
represented a car to be a Agood, excellent motor vehicle,@ but its engine was actually cracked.

The
Chandlers claim that the salesman told them that the Aspire was safer for their
children than a Geo Metro because it had dual air bags and that the passenger
air bag made the Aspire a safer vehicle. 
The Chandlers did not introduce any evidence to demonstrate that the
statements were false or misleading.  To
the contrary, Ford introduced unrebutted evidence that a vehicle with two air
bags is safer than a vehicle with only one air bag.  Moreover, Chandler said that the salesman=s statements were qualified: A[I]f [Chandler] was going to buy a small car,
the Ford Aspire would be safer.@  We also find that the salesman=s statements were Asales talk@ or Apuffing@ which are not actionable under the DTPA.  Autohaus, Inc. v. Aguilar, 794 S.W.2d 459, 460 (Tex.App. B Dallas 1990), writ den=d per curiam, 800 S.W.2d 853 (Tex.1991).

The
Chandlers introduced no evidence to demonstrate that Ford or Gene Messer Ford
engaged in deceptive advertising.  The
advertisements attached to Chandler=s affidavit simply state that air bags enhance overall vehicle
safety.  Appellants point out that one
advertisement for a Ford Taurus shows a child sitting in the front seat,
properly belted with a lap and shoulder belt. 
The advertisement is too vague to support the Chandlers= claim of a misrepresentation under the
DTPA.  See Douglas v. Delp, 987 S.W.2d
879, 886 (Tex.1999).  There also was no
evidence comparing the Taurus restraint system to that found in the
Aspire.  Further, it is common knowledge
that small cars such as the Aspire and the Geo Metro are not as safe for their
occupants as are larger cars.  There was
no misrepresentation under the DTPA.

 

 

 

 








B.  Alleged Non-Disclosure

Ford and
Gene Messer Ford challenged the Chandlers= claim that they had violated DTPA Section 17.46(b)(23)[1]
by a non-disclosure of a material fact. 
The alleged non-disclosure was the failure to warn the Chandlers of the
risks from a deploying air bag to a seven-year-old child in the front passenger
seat.  Former Section 17.46(b)(23)
required a plaintiff claiming non-disclosure under the DTPA to prove four
elements:

(1) a
failure to disclose information concerning goods or services;

(2) which
was known at the time of the transaction;

(3) if
such failure was intended to induce the consumer into a transaction;

(4) into which the consumer would not have
entered had the information been disclosed.

 

In their motion for
summary judgment, Ford and Gene Messer Ford asserted that there was no evidence
that, at the time the Chandlers purchased the Aspire, Ford or Gene Messer Ford
knew of the alleged risks to Philip or that they intentionally withheld
information concerning those risks from the Chandlers.

Non-disclosure
without evidence that a defendant had knowledge of the undisclosed information
and intentionally withheld the information is not actionable.  See Robinson v. Preston Chrysler-Plymouth,
Inc., 633 S.W.2d 500, 502 (Tex.1982). 
To demonstrate Ford=s knowledge, the Chandlers produced a 1972 Ford internal memorandum
which stated that there was a risk of serious injury from deploying air bags to
children under 12 years of age or under 5 feet tall.  Ford placed a warning of this risk on the passenger side of the
800 Mercuries equipped with prototype front seat air bags in 1972.  The 1972 memorandum and warnings are no evidence
that Ford knew of the alleged danger from the 1994 Aspire=s air bag to a seven-year-old boy.[2]  The Chandlers did not demonstrate that the
1972 air bag was the same as, or similar to, the 1994 Aspire air bag.








The
Chandlers also introduced no evidence to show that Ford intentionally
withheld  information that an Aspire air
bag posed a risk of serious injury to Philip. 
To the contrary, Ford=s warning on the Aspire visor specifically stated, AAn inflating air bag can seriously injure
small children.@  The
real question is whether Ford=s warnings were adequate, and that question will be examined as part of
the Chandlers= Section 402A marketing defect claim.  The trial court did not err in holding that
the Chandlers failed to produce evidence of a non-disclosure DTPA claim.

C.  Alleged Implied Warranties

Ford and
Gene Messer Ford pointed out to the trial court that a breach of implied
warranty of merchantability was not involved in this case.  We agree. 
A plaintiff in an implied warranty of merchantability case has the
burden of proving that the goods were defective at the time they left the
manufacturer=s or seller=s possession.  To prove that the
goods were defective, he must show that the goods were unfit for the ordinary
purposes for which they were used because of a lack of something necessary for
adequacy.  Hyundai Motor Company v.
Rodriguez, 995 S.W.2d 661, 665 (Tex.1999). 
The concept of Adefect@ for strict liability is that the product has
some condition that renders it Aunreasonably dangerous to the user.@  Section 402A; Plas-Tex., Inc.
v. U.S. Steel Corporation, 772 S.W.2d 442, 444 (Tex.1989).  In contrast, the concept of defect for a
breach of the merchantability warranty is that the goods sold are not fit for
the ordinary purpose for which the goods are used.  TEX. BUS. & COM. CODE ANN. ' 2.314(b) (Vernon 1994); Plas-Tex., Inc. v. U.S. Steel Corporation,
supra at 444.

The
ordinary purpose of an automobile is to provide transportation.  General Motors Corporation v. Brewer, 966
S.W.2d 56, 57 (Tex.1998); In re Air Bag Products Liability Litigation, 7 F.
Supp. 2d 792, 806 (E.D. La. 1998).  The
Chandlers= Aspire met this purpose.  The ordinary use of the air bag is to
restrain by deploying upon a frontal or near-frontal impact in which the driver
and front seat passenger could receive serious injuries.  See Sipes v. General Motors Corporation, 946
S.W.2d 143, 158 (Tex.App. B Texarkana 1997, writ den=d).  The Chandlers= Aspire air bag deployed and restrained
Philip, as opposed to the air bag in Sipes which failed to deploy upon
impact.  A product which performs its
ordinary function adequately does not breach the implied warranty of
merchantability merely because it does not function as the buyer would
prefer.  General Motors Corporation v.
Brewer, supra at 57.  There is nothing
in the record to show that a breach of the warranty of merchantability was
involved in this case.








The
Chandlers presented no evidence of a breach of the implied warranty of fitness
for a particular purpose.  The law
implies a warranty that goods are fit for some particular purpose when the
seller, at the time of the transaction, has reason to know of the particular
purpose for which the goods are required and the buyer is relying on the seller=s skill or judgment to select or furnish
suitable goods.  TEX. BUS. & COM.
CODE ANN. ' 2.315 (Vernon 1994).  The particular purpose must be a particular
non-ordinary purpose.  Miles v. Ford
Motor Company, 922 S.W.2d 572, 587 (Tex.App. B Texarkana 1996), rev=d in part on other grounds, 967 S.W.2d 377 (Tex.1998).  There is no evidence that the Chandlers
purchased the Aspire for some purpose other than the ordinary purpose of
transportation or that they purchased the air bag as part of the Aspire for
some purpose other than the ordinary purpose of its serving as part of the
restraint system.  The trial court did
not err in granting Ford and Gene Messer Ford a summary judgment on the
Chandlers= implied warranty claims.

Restatement
of Torts (Second) Section 402A

To impose
strict liability on a manufacturer or seller of a product, a plaintiff must
prove that the product is defective.  A
product is defective if it is Aunreasonably dangerous@ to the user.  Section 402A;
McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 788-89 (Tex.1967)(adopting
Section 402A as Texas law).  Determining
whether a product is Aunreasonably
dangerous@ depends on the category of the defect.  There are three categories: design,
manufacturing, and marketing.  American
Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 426 (Tex.1997).  

Even where
a product is properly designed and properly manufactured, it may be Aunreasonably dangerous@ because a manufacturer or seller fails to
warn adequately of the inherent dangers in the product or fails to give
adequate instructions as to its use. 
Bristol-Myers Company v. Gonzales, 561 S.W.2d 801, 802 (Tex.1978); Sims
v. Washex Machinery Corporation, 932 S.W.2d 559, 562 (Tex.App. B Houston [1st Dist.] 1995, no writ).  In marketing defect (failure to warn) cases,
a plaintiff must prove that:

(1) a risk of harm is inherent in the product
or may arise from the intended or reasonably anticipated use of the product;

 

(2) the product supplier actually knew or
should have reasonably foreseen the risk of harm at the time the product was
marketed;

 

(3) the product must possess a marketing
defect;[3]








(4) the absence of a warning or instructions
renders the product unreasonably dangerous to the user or consumer of the
product;

 

(5) 
the existence of a causal nexus between the failure to warn or instruct
and the user=s injury.

 

Jaimes v. Fiesta Mart,
Inc., 21 S.W.3d 301, 306 (Tex.App. B Houston [1st Dist.] 1999, pet=n den=d); Sims v. Washex Machinery Corporation,
supra at 562; Jobe v. Penske Truck Leasing Corp., 882 S.W.2d 447, 450 (Tex.App.
B Dallas 1994, no writ); USX Corporation v.
Salinas, 818 S.W.2d 473, 482-83 (Tex.App. B San Antonio 1991, writ den=d).

There was
evidence that 1994 Aspire air bags posed an inherent risk to children 12 years
of age and under.  Two years after
Philip was injured, Ford sent the Chandlers a letter instructing them to always
place their children in the back seat. 
Ford also provided stickers for the Aspire=s visor that warned ADEATH or SERIOUS INJURY can occur...Children 12 and under can be killed
by the air bag.@ 
These post-accident warnings were also some evidence that Ford should
have foreseen the risk of injury to Philip. 
See USX Corporation v. Salinas, supra at 484.

Ford and
Gene Messer Ford argued only two grounds to the trial court in their request
for a summary judgment against the Chandlers= marketing defect claim.  They
first argued that there was no duty to warn of obvious dangers or dangers that
are known by the plaintiff.  USX
Corporation v. Salinas, supra at 483; Blackwell Burner Company, Inc. v. Cerda,
644 S.W.2d 512, 516 (Tex.App. B San Antonio 1982, writ ref=d n.r.e.).  There was
conflicting evidence on whether the danger to Philip was obvious or known to
the Chandlers.  Chandler said that he
did not know the force at which air bags deployed; he thought they were soft
and acted like a pillow.  Ford and Gene
Messer Ford present no evidence to show that the risk of injury to a child of
Philip=s age and weight was common knowledge in
1994.  Ford had a duty to warn the
Chandlers, and we note that Ford and Gene Messer Ford do not argue this ground
on appeal.








The other
ground asserted by Ford and Gene Messer Ford to the trial court was that there
was no evidence of causation.  They
assumed that the Aspire=s warnings were inadequate, but they relied on General Motors
Corporation v. Saenz, 873 S.W.2d 353, 357 (Tex.1993), and Gillespie v. Century
Products Company, 936 S.W.2d 50, 52 (Tex.App. B San Antonio 1996, no writ), for an argument that the  failure to provide an adequate warning could
not have been the cause of Philip=s injury because, if the Chandlers had followed the inadequate warning,
the Chandlers would have prevented the injury to Philip.  Stated another way, Ford contends that its
warnings were at least sufficiently adequate to warn of the air bag=s risk to Philip.

To prove
that a failure to warn was a producing cause of an injury, a plaintiff is aided
by a presumption that proper warnings would have been followed by the plaintiff
had the warnings been provided.  General
Motors Corporation v. Saenz, supra at 357-59; Magro v. Ragsdale Brothers, Inc.,
721 S.W.2d 832, 834 (Tex.1986).  Saenz
and Gillespie held that the plaintiff does not benefit from this
presumption if Ain fact, he paid no attention to the warning
given, which if followed would have prevented his injuries.@ 
General Motors Corporation v. Saenz, supra at 359; Gillespie v. Century
Products Company, supra at 52.  If the
gross vehicle weight rating and warning had been followed in Saenz, the
accident would have been prevented.  As
the Gillespie court observed, the father stated that, had he read the
label telling him to place an infant in a rear-facing position, he would have
done so.

The
warning on the visor of the Chandlers= Aspire, however, stated, AAn inflating air bag can seriously injure small children.@ 
Whether a reasonably prudent parent in 1994 would have interpreted Asmall children@ to include a seven year old is a fact question.  The Aspire owner=s manual defined small children:

If small children ride in your vehicle
B this generally includes children who are
four years old or younger and who weigh 40 pounds (18kg) or less B you must put them in safety seats that are
made specially for children.  (Emphasis
added)

 

It can be argued that
even Ford apparently thought that its warning about Asmall children@ on the Aspire visor included only children four years of age or
younger weighing 40 pounds or less. The Chandlers provided sufficient evidence
to demonstrate that there is a fact question as to whether Ford=s warnings to the Chandlers were adequate to
inform them of the danger to Philip.  








In the
similar case of Stewart v. Transit Mix Concrete & Materials Company, 988
S.W.2d 252, 256 (Tex.App. B Texarkana 1998, pet=n den=d), there was a warning, but the question was
whether someone reading the warning would have realized that it applied to Awashout.@  The warning pointed out that
cement powder or freshly mixed concrete may cause serious skin injury.  Washout is concrete, containing cement, that
is left over after a commercial or residential job.  Stewart denied knowing what the contents of washout were or that
it could burn him.  There was a dispute
as to whether the defendant told Stewart what washout contained.  The Stewart court held that the
evidence was sufficient to raise a fact issue on whether a warning was given
that applied to washout.  Ford=s warnings on the Aspire=s visor pose a similar fact issue of whether
the warnings given applied to a seven year old.

Because
Chandler admitted that he did not read the warnings that Ford provided, it can
be argued that his admission negates the existence of a causal nexus between
any failure to warn or to instruct adequately and the user=s injury. 
The plaintiff in Stewart also did not read the written warning
given about cement powder or freshly mixed concrete.  The Stewart court addressed the policy issue:

It may be argued that it makes no difference
what product the warning addressed if Stewart never read it.  If this were the case, a warning would have
no more possibility of preventing an occurrence than if Stewart had been given
a recipe for chocolate chip cookies. 
But the law and the presumptions are intended to have a policy effect,
both to encourage appropriate warnings by the manufacturer and to encourage the
reading of those warnings by the consumer. 
To allow no warning to have the same effect as a defective warning would
negate this policy.  Thus, here, the
issue is not a question of an adequate warning but a question of whether there
was a warning applicable to washout.

 

Stewart v. Transit Mix
Concrete & Materials Company, supra at 256-57.  Thus, the Stewart court concluded that Stewart would still
be entitled to the presumption if he obtained a favorable determination of the
fact issue on whether the warning given applied to washout.  

A
plaintiff in a marketing defect case may raise a fact issue on causation by
presenting evidence in support of causation or by relying on a presumption of
causation.  In many cases, the plaintiff
is aided by the presumption that proper warnings would have been followed had
they been provided.  Where the plaintiff
fails to read the warnings actually given, Saenz benefits the
manufacturer by its holding that the presumption does not apply if there would
have been no injury had the plaintiff followed the warnings that were
given.  Stewart benefits the
plaintiff by its conclusion that the presumption still will be applied if the
warnings given would not have prevented the injury even if the plaintiff had
read them.    

The trial
court erred in granting summary judgment to Ford and Gene Messer Ford on the
Chandlers= Section 402A marketing defect claim.








In a
conditional cross-point, Ford and Gene Messer Ford request that their
cross-claims against Smith be reinstated if this court remands any of the
Chandlers= claims against Ford or Gene Messer
Ford.  They argue that, if any of the
Chandlers= claims are remanded, they are entitled to
have Smith=s conduct submitted to the jury for a
determination of her comparative fault and her liability.  Ford and Gene Messer Ford preserved their
conditional cross-point by filing their own notice of appeal.  We agree that their cross-claims should be
reinstated. 

 This Court=s Ruling

The trial
court=s judgment is affirmed except for its
judgment on the Chandlers= marketing defect claim.  We
reverse and remand the trial court=s judgment on the marketing defect claim.  We also reverse and remand the trial court=s judgment dismissing the cross-claims of
Ford and Gene Messer Ford against Carrie Kinkler Smith.

 

TERRY
McCALL

JUSTICE

 

July 3, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]Effective September 1, 2001, subdivision (23) became
subdivision (24) of Section 17.46(b).





[2]However, the 1972 memorandum and warning would be more
than a scintilla of evidence that Ford should have known of a danger to a seven
year old.  An element of a marketing
defect under Section 402A is that the defendant knew or should have known
of a risk of harm to the plaintiff.





[3]Although the cited cases list this as an element, it
would seem that this element is simply a combination of Elements Nos. 1, 2, and
4.