**James and Frances STEWART,**
**Appellants,**

v.

**TRANSIT MIX CONCRETE &**
**MATERIALS COMPANY,**
**Appellee.**

No. 06–98–00040–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 24, 1998.

Decided Dec. 16, 1998.

Frank Supercinski, Longview, for appellant.

Chris Bunt, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Justice GRANT.

James and Frances Stewart appeal a summary judgment granted in favor of Transit Mix Concrete and Materials Company on their causes of action for failure to warn in strict liability, negligence, deceptive trade practices, and breach of warranties. Transit Mix filed a no evidence summary judgment motion challenging the element of causation.

The Stewarts contend the evidence raises a genuine issue of material fact on causation. The Stewarts also contend the trial court erred in not awarding them sanctions and attorney's fees against Transit Mix. Lastly, the Stewarts contend the trial court erred in granting summary judgment on each of their causes of action based on causation because a material fact issue was raised.

There was summary judgment proof showing the following facts. On February 25, 1997, James Stewart went to Transit Mix to purchase gravel or a less expensive alternative to lay a foundation for his driveway. Stewart spoke with an employee of Transit Mix, Andrew Grier, who recommended either crushed limestone or a product called "washout." Stewart purchased washout.

Washout is concrete, which contains cement, that is left over after a commercial or residential construction job. The remaining concrete is washed out of the mixer truck. Water is added, and it is placed into a pit where it is left for a day or more. Transit Mix scrapes the washout from the pit with a front-end loader and sells it to customers. Grier described it as a gray, clumpy material with sand and rock when it is dry.

Cement has an alkali base which can cause burns. Calcium chloride, which is often mixed with concrete to accelerate the setting time, can also cause burns. Stewart said

Grier told him that water activates the calcium chloride. Calcium chloride is added to the concrete by customers after it is sold or prior to sale by Transit Mix upon a customer's request. There is no summary judgment proof whether calcium chloride was added in this case.

Washout was sold in bulk and was not sold in containers. Here, Transit Mix scooped up the gray clumpy material with a front-end loader and dumped it into the bed of Stewart's pickup. Transit Mix gave Stewart a numbered invoice. The invoice (Exhibit Number One) attached to the summary judgment motion contains the following language:

> **CAUTION!** Cement powder or freshly mixed concrete, grout, or mortar may cause serious skin injury. Avoid contact with skin and wash exposed skin areas immediately with water. If any cement powder or mixture gets into the eyes, rinse immediately and repeatedly with water and get prompt medical attention.

**KEEP OUT OF REACH OF CHILDREN!** The upper left hand corner contains a paragraph with a different wording not at issue on appeal. Immediately above these paragraphs is a shaded box containing the capitalized words **"UNLOADING"** and **"CAUTION"** in bold type. These words are separated by a large space within the shaded box. Beneath the paragraphs is another shaded box containing the time, date, customer's name, and ticket number. Below that shaded area is an unshaded box, followed by another shaded box that contains headings for columns reading from left to right "Quantity Ordered," "Quantity Delivered," "Product Code," "Product Description," "Unit of Measure," "Unit Price," and "Extended Price." Beneath the column entitled "Product Description" is a line containing the words "EXTRA PRODUCTS." On the next line, beneath the words "EXTRA PRODUCTS" are the words "WASH OUT PER YARD." The remaining portion of the invoice showing the columns and lines is blank with the exception of the tax and total in the lower right hand corner under the extended price column.

Stewart said he noticed the caution sign on the invoice, but he did not read it. Stewart put the invoice in the glove compartment of his truck and went home. That afternoon, Stewart began laying the base for his driveway. He scooped the washout from his truck with a shovel, a rake, and later a board. Stewart was wearing a short sleeve shirt, coveralls, and boots. Shortly after Stewart began working, it started raining. As the washout got wetter, Stewart used the board to spread the washout. In doing so, some of the washout spilled into his boots. Stewart continued working.

Later, Stewart took a shower and noticed red spots on his legs and arms. He also felt a burning sensation. Stewart sought medical attention and received extensive treatment for skin burns for several months.

Grier believed he explained the contents of washout to Stewart but was not sure. Stewart said Grier explained the product to him, but he could not recollect whether Grier told him what materials went into washout. However, Stewart stated he understood it as material brought back from job sites in a tumbler. Stewart said he put on boots because he had a general idea that you should not get cement on your body.

On June 5, 1997, the Stewarts brought a personal injury suit against Transit Mix for strict liability and negligence. The Stewarts amended their petition on December 19, 1997, adding claims for breach of the implied warranties of merchantability and fitness for a particular purpose and violation of the Texas Deceptive Trade Practices Act. On November 24, 1997, Transit Mix filed a summary judgment motion contending there was no evidence of causation. On January 5, 1998, the trial court heard Transit Mix's motion and granted summary judgment in favor of Transit Mix on February 11, 1998. The Stewarts appeal.

In their first point of error, the Stewarts contend the trial court erred in granting summary judgment in favor of Transit Mix because the evidence raises a fact issue on causation.

On September 1, 1997, the Texas Supreme Court adopted Rule 166a(i):

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.[1]

In August, the court issued a comment to the 1997 rule change which is intended to inform the construction and application of the rule. The comment states:

The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case. Paragraph (i) does not apply to ordinary motions for summary judgment under paragraphs (a) or (b), in which the movant must prove it is entitled to judgment by establishing each element of its own claim or defense as a matter of law or by negating an element of the respondent's claim or defense as a matter of law. To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.[2]

In reviewing a summary judgment, we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in his or her favor.[3]

■ Stewart contends the invoice Transit Mix provided did not contain a specific warning that washout could burn his skin and that he was entitled to a warning. He argues that there was no warning applicable to washout. Stewart denies knowing the contents of washout and argues that he did not know the warning on the invoice applied to the washout. The Stewarts argue they are entitled to a presumption that, had a warning been given, they would have heeded it.

Transit Mix argues that the warning it gave was adequate, and in the alternative, if its warning was inadequate, its failure to give a different warning could not have caused the accident since Stewart did not read the warning Transit Mix did give. Transit Mix argues that not only did Grier inform Stewart that washout was concrete and cement left over from commercial and residential jobs, but Stewart acknowledged as much in his deposition testimony.

■ To defeat Transit Mix's no-evidence summary judgment motion, the Stewarts must have raised a fact issue concerning causation. The Stewarts may raise a fact issue on causation by presenting evidence in support of causation or by relying on a presumption of causation. The Stewarts based their causes of action on a failure to warn. To recover for negligence or for breach of the implied warranties, the Stewarts must show that Transit Mix's failure to adequately warn was a proximate cause of Stewart's injuries;[4] to recover under strict liability or the DTPA, they must show that the failure to properly warn was a producing cause of the injuries.[5] The difference is that proof of proximate cause entails a showing that the incident was foreseeable, while proof of producing cause does not.[6] The element common to both proximate cause and producing cause is actual causation-in-fact.[7] Thus, to recover on either of their claims, the Stewarts must show that, but for Transit Mix's

1. Tex.R. Civ. P. 166a(i).

2. Tex.R. Civ. P. 166a cmt. 2 (Vernon Supp.1998).

3. *Randall's Food Markets., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995).

4. *General Motors Corp. v. Saenz,* 873 S.W.2d 353, 357 (Tex.1993); *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 935–36 (Tex.App.—Texarkana 1997, writ denied).

5. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996); *General Motors Corp.,* 873 S.W.2d at 357; *Purina Mills,* 948 S.W.2d at 935–36.

6. *General Motors Corp.,* 873 S.W.2d at 357; *Purina Mills,* 948 S.W.2d at 935–36.

7. *Id.*

failure to provide an adequate warning, Stewart's injuries would not have occurred.[8]

▉ To prove causation in a failure-to-warn case, a plaintiff is aided by a presumption that proper warnings would have made a difference (i.e. the warnings would have been followed had they been provided).[9] However, the presumption operates one way when no warning is provided, and a different way when a warning was provided but it is arguably inadequate.[10] In the instance of no warning, it is presumed that proper warnings would have been heeded.[11] However, no presumption arises that a plaintiff would have heeded a better warning when, in fact, he did not read the warning given, which if followed would have prevented his injuries.[12] If following the warning and instructions actually provided would have prevented the injury despite the warning's inadequacy, the deficiency could not be the cause of any injury.[13] In such a case, the plaintiff does not have a cause of action for failure-to-warn because there is no causation-in-fact.[14]

The Stewarts argue that *General Motors v. Saenz*[15] is distinguishable because there was no warning in the instant case. In *General Motors*, there was a warning about overloading a truck.[16] The Stewarts argue that Stewart was not required to read a warning about a product he did not buy, i.e., cement, concrete, grout, or mortar, which the warning on the invoice addressed. Stewart did admit knowing washout contained cement because he testified that he put on boots to protect himself from the cement. The Stewarts rely on older cases, which set forth the elements necessary for an adequate warning, but these cases do not apply in light of *General Motors*, where the warning given was not read.

Stewart argues that the washout was listed under "EXTRA PRODUCTS" on the invoice and thus, a reasonable person could conclude that the warning at the top of the invoice did not concern washout.

▉ The rule in Texas has long been that a manufacturer is required to provide an adequate warning.[17] A warning is deemed legally adequate only when certain prerequisites are satisfied:

(1) it must be in such form that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; (2) the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.... [Moreover], the question of whether a warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product.[18]

The issue in this case is whether the warning given to Stewart was applicable to the product he purchased. It may be argued that it makes no difference what product the warning addressed if Stewart never read it.

---

8. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995).

9. *General Motors Corp.*, 873 S.W.2d at 359; *Gillespie v. Century Products Co.*, 936 S.W.2d 50, 52 (Tex.App.—San Antonio 1996, no writ).

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. 873 S.W.2d at 359.

16. *id.* at 354.

17. *General Chem. Corp. v. De La Lastra*, 815 S.W.2d 750, 754 (Tex.App.—Corpus Christi 1991), *aff'd in part, rev'd and remanded in part on other grounds*, 852 S.W.2d 916 (Tex.1993); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 592 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.); *Shop Rite Foods, Inc. v. Upjohn Co.*, 619 S.W.2d 574, 579 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.); *Pearson v. Hevi–Duty Elec.*, 618 S.W.2d 784, 787 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Lopez v. Aro Corp.*, 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Bituminous Cas. Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

18. *General Motors Corp.*, 873 S.W.2d at 362 (Doggett, J. dissenting) (citing *Bituminous Cas. Corp.*, 518 S.W.2d at 872–73).

If this were the case, a warning would have no more possibility of preventing an occurrence than if Stewart had been given a recipe for chocolate chip cookies. But the law and the presumptions are intended to have a policy effect, both to encourage appropriate warnings by the manufacturer and to encourage the reading of those warnings by the consumer. To allow no warning to have the same effect as a defective warning would negate this policy. Thus, here, the issue is not a question of an adequate warning but a question of whether there was a warning applicable to washout.

When the evidence is viewed in the light most favorable to Stewart, and indulging all possible inferences in his favor, the summary judgment proof raised a fact question on whether a warning was given that was applicable to washout. Washout was listed under the words "EXTRA PRODUCTS." The fact issue is whether the invoice that was used and the circumstances surrounding the transaction constituted a warning.

Grier acknowledged not giving Stewart a specific warning on washout. Stewart denied knowing what the contents of washout were or that it could burn him. Stewart said no sign was posted next to the washout informing him that it was harmful if it came into contact with his skin. There was a dispute as to whether Grier told Stewart what washout contained. This was sufficient to raise a fact issue on whether a warning was given that applied to washout. Whether the Stewarts were entitled to the presumption depends on this fact issue. Point of error number one is sustained.

In their second point of error, the Stewarts contend the trial court erred in not awarding sanctions and attorneys fees against Transit Mix for filing a frivolous motion for summary judgment. The Stewarts contend that Transit Mix's motion was groundless, brought for the purpose of delay and needless expense. Specifically, the Stewarts allege Transit Mix (1) did not disclose all discovery facts known to it when it filed its summary judgment motion, (2) intentionally left out evidence known by it to raise a genuine issue of material fact, and (3) tried to create a false impression or deceive the court by leaving out contradictory and material evidence in between cited deposition testimony.

The Stewarts argue this conduct is sanctionable because a movant will always argue there is no genuine issue of material fact despite discovery which raises a genuine issue of material fact, and state and federal standards of review require a movant to truthfully meet its initial burden of establishing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. As discussed above, the Stewarts misconstrue the law as it applies to Transit Mix's no-evidence summary judgment motion. Transit Mix does not have the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on a no-evidence summary judgment motion.[19]

The Stewarts direct our attention to the recent Texas Supreme Court case, *Burlington Northern R..R.. Co. v. Southwestern Elec. Power Co.*,[20] where the Court upheld sanctions for the nonproduction of material deposition testimony. This case is inapposite. Burlington Northern made repeated requests for deposition testimony and Southwestern Electric Power Company did not produce the testimony until three days before opening arguments.[21] Such is not the case here. No repeated requests for discovery were made by the Stewarts, nor did Transit Mix fail to produce.

The imposition of Rule 13 sanctions[22] is within the discretion of the trial court. Thus, we will set aside its decision only upon a showing of a clear abuse of discretion.[23] A trial court abuses its discre-

---

19. Tex.R. Civ. P. 166a(i).

20. 925 S.W.2d 92 (Tex.App.—Texarkana 1996), aff'd, 966 S.W.2d 467 (Tex.1998).

21. *Burlington N. R.R. Co.*, 925 S.W.2d at 99.

22. Tex.R. Civ. P. 13.

23. *Wallace v. Inv. Advisors, Inc.*, 960 S.W.2d 885, 888 (Tex.App.—Texarkana 1997, writ denied); *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993); *Woodward v. Jaster*,

tion when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles.[24]

The trial court dismissed the Stewarts' motion for sanctions stating that "[I] think we're in a state of law right now that an arguable position is being made before this Court, certainly not frivolous in this Court's opinion, and I'm not going to penalize a lawyer for zealously representing the interests of his client. And I'm sure if he didn't do it, I'm sure he would be a defendant in a malpractice lawsuit, I assure you." The trial court granted the summary judgment, which indicates the trial court believed Transit Mix's motion was not groundless or brought solely for the purpose of delay. The trial court did not abuse its discretion or act in an unreasonable or arbitrary manner. Point of error number two is overruled.

In their third point of error, the Stewarts contend the trial court erred in granting summary judgment on each of their causes of action. Because we determined the Stewarts raised a fact issue on whether they were given a warning applying to washout, we need not address this point of error.

The judgment is reversed and remanded.

933 S.W.2d 777, 782 (Tex.App.—Austin 1996, no writ).

24. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Wallace,* 960 S.W.2d at 888.