Philip Malcolm CHANDLER and Ronda Chandler, Individually and as Next Friends of Philip Malcolm Chandler, Jr. and Jamie Renee Chandler, Appellants,

v.

GENE MESSER FORD, INC.; Gene Messer Ford of Amarillo, Inc.; and Ford Motor Company, Appellees/Appellants,

v.

Carrie Kinkler Smith, Appellee.

No. 11–00–00332–CV.

Court of Appeals of Texas, Eastland.

July 3, 2002.

Rehearing Overruled Aug. 22, 2002.

William Edwards, Williams Edwards, III, John Blaise Gsanger, Edwards Law Firm, Donald Edwards, Craig Smith, Corpus Christi, Frank Branson, George Tex Quesada, Law Office of Frank Branson, Dallas, for appellants.

Jose Luzarraga, Peter Moir, Joseph Knight, Bob Shannon, Baker & Botts, Austin, for appellees.

Wesley Hightower, Jennifer Litke, Blaies & Hightower, Fort Worth, for other attorneys.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

TERRY McCALL, Justice.

This appeal is from a summary judgment granted to Gene Messer Ford, Inc. and Gene Messer Ford of Amarillo, Inc. (Gene Messer Ford) and Ford Motor Company (Ford) in a suit arising out of an automobile collision. We affirm in part and reverse and remand in part.

### Background Facts

Philip Malcolm Chandler, Jr. was injured in May 1995 while riding in the front passenger seat of his parents' Ford Aspire. His father was driving northbound on Western Drive in Amarillo. Carrie Kinkler Smith, traveling southbound on Western, turned her Buick LeSabre left in front of the oncoming Chandlers. The smaller Aspire crashed into the side of the Buick, and the Aspire's front seat air bags deployed. The Chandlers' daughter, Jamie Renee Chandler, was sitting in the back seat and wearing her lap and shoulder belts. Jamie and Mr. Chandler, who also was properly belted, received only minor injuries. Philip, seven years old, weighing approximately 60–65 pounds, suffered a severe closed-head injury. There is conflicting evidence on whether Philip was properly belted; we will assume that he was. The Chandlers claim that the passenger air bag enhanced Philip's injuries, that Ford and Gene Messer Ford misrepresented the Aspire's safety characteristics, and that Ford and Gene Messer Ford failed to warn them of the possible risks to a child riding in the front passenger seat.

The Ford Aspire is a small car. Mr. Chandler said that he told the Gene Messer Ford salesman that he wanted to buy a small car to save on gasoline but that his wife, Ronda, was opposed to small cars because of her concern about the safety of their children. He also told the salesman that he had been looking at a Geo Metro and that he liked the Geo Metro a lot. According to Chandler, the salesman informed him that the Ford Aspire had dual air bags which the Geo Metro did not and that, in the salesman's opinion, if Chandler

was going to buy a small car, the Ford Aspire would be safer for children because of the passenger side air bag. Chandler and the salesman took the Aspire to Ronda's workplace for her approval. The salesman assured Ronda of the safety of the Aspire; and, based on the salesman's assurances, the Chandlers purchased the Ford Aspire.

Philip Malcolm Chandler and Ronda Chandler, individually and as next friends of Philip Malcolm Chandler, Jr. and Jamie Renee Chandler, sued Smith for negligence. They also sued Ford and Gene Messer Ford for design and marketing defects under Section 402A of the Restatement (Second) of Torts (1965); misrepresentations under Section 402B of the Restatement (Second) of Torts (1965); negligence; and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987 & Pamph. Supp.2002), including breach of implied warranties. Ford and Gene Messer Ford filed a cross-claim against Smith. After discovery, Ford and Gene Messer Ford sought a partial summary judgment on the Chandlers' causes of action for misrepresentations under Section 402B, violations of the DTPA, and market defect under Section 402A. Their motion for summary judgment included a traditional motion under TEX.R.CIV.P. 166a(c) and a no-evidence motion under TEX.R.CIV.P. 166a(i). After the trial court granted their requested partial summary judgment without specifying the grounds, appellants nonsuited their remaining causes of action for design defect and negligence. The trial court then dismissed Ford's and Gene Messer Ford's cross-claim against Smith, creating a final judgment from which the Chandlers appealed.

## Standard of Review

A trial court should grant a motion for summary judgment if the moving party establishes that: (1) no genuine issue of material fact exists and (2) the moving party is entitled to judgment as a matter of law. Rule 166a(c); *M.D. Anderson Hospital and Tumor Institute v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Once the movant for a traditional summary judgment establishes his right to a summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979). The question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). When reviewing a summary judgment, we take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *M.D. Anderson Hospital and Tumor Institute v. Willrich, supra* at 23; *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A party filing a no-evidence motion for summary judgment must specify the elements of a cause of action upon which the non-movant bears the burden of proof but has no evidence. Rule 166a(i). The non-movant must present some summary judgment evidence that raises a genuine fact issue on the specifically challenged elements. Rule 166a(i); *McCombs v. Children's Medical Center of Dallas,* 1 S.W.3d 256, 258 (Tex.App.-Texarkana 1999, pet'n den'd). The appellate court reviews evidence presented in response to a motion

for a no-evidence summary judgment in the same way it reviews evidence presented in response to a traditional motion for summary judgment; it accepts as true evidence favorable to the non-movant and indulges every reasonable inference and resolves all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic,* 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet'n den'd). A no-evidence summary judgment is improper if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *McCombs v. Children's Medical Center of Dallas, supra* at 258. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

Because the trial court's order granting summary judgment did not specify the ground or grounds relied on for its ruling, we will affirm if any of Ford's and Gene Messer Ford's theories have merit. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### Restatement of Torts (Second) Section 402B

In their summary judgment motion, Ford and Gene Messer Ford asserted that appellants had presented no evidence of a misrepresentation under Section 402B of the Restatement (Second) of Torts. Texas adopted Section 402B in *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.,* 514 S.W.2d 429, 431 (Tex.1974). Section 402B provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold

> by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> > (a) it is not made fraudulently or negligently, and
>
> > (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

■ Appellants alleged that the salesman's statements to them—that dual air bags made the Aspire safer than a Geo Metro and safer for children—were misrepresentations within Section 402B. Ford and Gene Messer Ford asserted in their motion for summary judgment that Section 402B did not apply because the salesman's alleged statements were not "public misrepresentations" and the statements were simply his opinion or "sales talk." We agree that Section 402B does not apply to private misrepresentations. *Lewis & Lambert Metal Contractors, Inc. v. Jackson,* 914 S.W.2d 584, 590 (Tex.App.-Dallas 1994), *vacated per settlement,* 938 S.W.2d 716 (Tex.1997); *Rehler v. Beech Aircraft Corporation,* 777 F.2d 1072, 1079 (5th Cir. 1985). Section 402B applies only to misrepresentations made to the public at large in the form of advertising, labels, or similar broad forms of communication. Section 402B, comment h, defines what "to the public" means:

> h. "To the public." The rule stated in this Section is limited to misrepresentations which are made by the seller to the public at large, in order to induce purchase of the chattels sold, or are intended by the seller to, and do, reach the public. The form of the representation is not important. It may be made by public advertising in newspapers or television, by literature distributed to the public through dealers, by labels on the product sold, or leaflets accompany-

ing it, or in any other manner, whether it be oral or written.

The Gene Messer Ford salesman's alleged misrepresentations were not made to the public at large.

■ We also find that the salesman's statements were simply an expression of his opinion; they were not misrepresentations of a material fact. See Section 402B, comment g. Even if the alleged statements were considered to be statements concerning a material fact, there was no proof by the Chandlers that the statements were misrepresentations. The Chandlers presented no evidence that the Aspire was not safer than the Geo Metro, and they presented no evidence to show that Philip's injuries were made worse by the air bag or that the Aspire with dual air bags was not safer for children.

■ Appellants argue that Ford's advertisements, showing children riding in the front seat, coupled with the owner's manual and seat belts indicating that children may ride in the front seat, were Section 402B misrepresentations. We have reviewed the advertisements attached to Chandler's affidavit. We find that none of the advertisements provide a basis for a Section 402B claim. The advertisements are general statements about the safety benefits of dual air bags. There is only one advertisement relating to an Aspire, and it shows children running from the vehicle with the caption "Standard Dual Airbags." The advertisement also states that the Aspire has features "to protect your dreams" and that it is "the lowest priced car with standard dual air bags." The advertisements do not constitute Section 402B misrepresentations; they are assertions of general safety and dependability. Section 402B, comment g (statements of opinion or "loose general praise of wares sold" are not a representation of material fact); James B. Sales, *The Inno-*

*cent Misrepresentation Doctrine: Strict Tort Liability Under Section 402B*, 16 HOUS. L. REV. 239, 259 (1979)(citing *Jack Roach–Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967)).

The combined effect of the advertising, the Aspire's owner's guide, the seat belts, and the visor warning also does not amount to a misrepresentation under Section 402B. The warning label on the sun visor stated that "[a]n inflating air bag can seriously injure small children" after stating that "[a]ir bags inflate with great force, faster than the blink of an eye." The owner's manual contained additional warnings and instructions stating that children should be placed in the rear seat:

> **Warning**: When possible, put children in the rear seat of your vehicle. Accident statistics suggest that children are safer when properly restrained in the rear seating positions than in the front seating positions.

■ Finally, appellants point out that Ford labeled the Aspire as a Ford even though it was designed by Mazda and built by Kia. Because Chandler had determined that he would never purchase a vehicle made by Kia, appellants contend that Ford's labeling of the Aspire as a Ford was a misrepresentation under Section 402B. We disagree. There is no evidence that Ford concealed the fact that the Aspire was built by Kia. The Aspire is a Ford sold at Ford dealerships with a Ford warranty. It is common knowledge that we live in a global economy and that the manufacturing of automobiles and their parts is often contracted to foreign companies.

The trial court did not err in granting summary judgment to Ford and Gene Messer Ford on appellants' Section 402B misrepresentation claims.

### Deceptive Trade Practices Act

The basic elements of a DTPA action for failure to disclose material information and for misrepresentations are:

(1) The plaintiff is a consumer;

(2) The defendant engaged in a false, misleading, or deceptive act that is specifically enumerated in a subdivision of Section 17.46(b); and

(3) The act constituted a producing cause of the consumer's damages.

TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Pamph. Supp.2002); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). Additional elements are required by the various subdivisions of Section 17.46(b).

### A. Alleged Misrepresentations

■ Appellants claim that the salesman's statements and Ford's advertising, which they claimed were misrepresentations under Section 402B, were also false, misleading, or deceptive acts or practices under Section 17.46(b)(5) of the DTPA because Ford and Gene Messer Ford were:

(5) representing that goods [the Aspire] ha[d] sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which [the Aspire did not have].

■ Appellants had the burden of introducing evidence to demonstrate that the alleged misrepresentations were false or misleading. *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980); *Milt Ferguson Motor Company v. Zeretzke,* 827 S.W.2d 349, 355 (Tex.App.-San Antonio 1991, no writ). In *Pennington,* for example, there was evidence that the seller represented that a used boat was in excellent condition when the boat actually had a cracked gear housing. Similarly, there was a misrepresentation under the DTPA in *Milt Ferguson Motor Company* when the dealership represented a car to be a "good, excellent motor vehicle," but its engine was actually cracked.

The Chandlers claim that the salesman told them that the Aspire was safer for their children than a Geo Metro because it had dual air bags and that the passenger air bag made the Aspire a safer vehicle. The Chandlers did not introduce any evidence to demonstrate that the statements were false or misleading. To the contrary, Ford introduced unrebutted evidence that a vehicle with two air bags is safer than a vehicle with only one air bag. Moreover, Chandler said that the salesman's statements were qualified: "[I]f [Chandler] was going to buy a small car, the Ford Aspire would be safer." We also find that the salesman's statements were "sales talk" or "puffing" which are not actionable under the DTPA. *Autohaus, Inc. v. Aguilar,* 794 S.W.2d 459, 460 (Tex.App.-Dallas 1990), *writ den'd per curiam,* 800 S.W.2d 853 (Tex.1991).

■ The Chandlers introduced no evidence to demonstrate that Ford or Gene Messer Ford engaged in deceptive advertising. The advertisements attached to Chandler's affidavit simply state that air bags enhance overall vehicle safety. Appellants point out that one advertisement for a Ford Taurus shows a child sitting in the front seat, properly belted with a lap and shoulder belt. The advertisement is too vague to support the Chandlers' claim of a misrepresentation under the DTPA. See *Douglas v. Delp,* 987 S.W.2d 879, 886 (Tex.1999). There also was no evidence comparing the Taurus restraint system to that found in the Aspire. Further, it is common knowledge that small cars such as the Aspire and the Geo Metro are not as safe for their occupants as are larger cars. There was no misrepresentation under the DTPA.

### B.   Alleged Non–Disclosure

Ford and Gene Messer Ford challenged the Chandlers' claim that they had violated DTPA Section 17.46(b)(23) [1] by a non-disclosure of a material fact.   The alleged non-disclosure was the failure to warn the Chandlers of the risks from a deploying air bag to a seven-year-old child in the front passenger seat.   Former Section 17.46(b)(23) required a plaintiff claiming non-disclosure under the DTPA to prove four elements:

(1) a failure to disclose information concerning goods or services;

(2) which was *known* at the time of the transaction;

(3) if such failure was *intended to induce* the consumer into a transaction;

(4) into which the consumer would not have entered had the information been disclosed.

In their motion for summary judgment, Ford and Gene Messer Ford asserted that there was no evidence that, at the time the Chandlers purchased the Aspire, Ford or Gene Messer Ford knew of the alleged risks to Philip or that they intentionally withheld information concerning those risks from the Chandlers.

▆▆▆▆   Non-disclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is not actionable. See *Robinson v. Preston Chrysler–Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex.1982). To demonstrate Ford's knowledge, the Chandlers produced a 1972 Ford internal memorandum which stated that there was a risk of serious injury from deploying air bags to children under 12 years of age or

under 5 feet tall.   Ford placed a warning of this risk on the passenger side of the 800 Mercuries equipped with prototype front seat air bags in 1972.   The 1972 memorandum and warnings are no evidence that Ford knew of the alleged danger from the 1994 Aspire's air bag to a seven-year-old boy.[2]   The Chandlers did not demonstrate that the 1972 air bag was the same as, or similar to, the 1994 Aspire air bag.

The Chandlers also introduced no evidence to show that Ford *intentionally* withheld information that an Aspire air bag posed a risk of serious injury to Philip. To the contrary, Ford's warning on the Aspire visor specifically stated, "An inflating air bag can seriously injure small children."   The real question is whether Ford's warnings were adequate, and that question will be examined as part of the Chandlers' Section 402A marketing defect claim.   The trial court did not err in holding that the Chandlers failed to produce evidence of a non-disclosure DTPA claim.

### C.   Alleged Implied Warranties

▆▆▆▆   Ford and Gene Messer Ford pointed out to the trial court that a breach of implied warranty of merchantability was not involved in this case.   We agree.   A plaintiff in an implied warranty of merchantability case has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession.   To prove that the goods were defective, he must show that the goods were unfit for the ordinary purposes for which they were used because of a lack of something necessary for adequacy. *Hyundai Motor Company v. Rodriguez,*

---

1. Effective September 1, 2001, subdivision (23) became subdivision (24) of Section 17.46(b).

2. However, the 1972 memorandum and warning would be more than a scintilla of evidence that Ford should have known of a danger to a seven year old.   An element of a marketing defect under Section 402A *is that the defendant knew or *should have known* of a risk of harm to the plaintiff.

995 S.W.2d 661, 665 (Tex.1999). The concept of "defect" for strict liability is that the product has some condition that renders it "unreasonably dangerous to the user." Section 402A; *Plas–Tex., Inc. v. U.S. Steel Corporation*, 772 S.W.2d 442, 444 (Tex.1989). In contrast, the concept of defect for a breach of the merchantability warranty is that the goods sold are not fit for the ordinary purpose for which the goods are used. TEX. BUS. & COM. CODE ANN. § 2.314(b) (Vernon 1994); *Plas–Tex., Inc. v. U.S. Steel Corporation, supra* at 444.

■■■ The ordinary purpose of an automobile is to provide transportation. *General Motors Corporation v. Brewer*, 966 S.W.2d 56, 57 (Tex.1998); In re Air Bag Products Liability Litigation, 7 F.Supp.2d 792, 806 (E.D.La.1998). The Chandlers' Aspire met this purpose. The ordinary use of the air bag is to restrain by deploying upon a frontal or near-frontal impact in which the driver and front seat passenger could receive serious injuries. See *Sipes v. General Motors Corporation*, 946 S.W.2d 143, 158 (Tex.App.-Texarkana 1997, writ den'd). The Chandlers' Aspire air bag deployed and restrained Philip, as opposed to the air bag in *Sipes* which failed to deploy upon impact. A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as the buyer would prefer. *General Motors Corporation v. Brewer, supra* at 57. There is nothing in the record to show that a breach of the warranty of merchantability was involved in this case.

■■■ The Chandlers presented no evidence of a breach of the implied warranty of fitness for a particular purpose. The law implies a warranty that goods are fit for some particular purpose when the seller, at the time of the transaction, has

reason to know of the particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. TEX. BUS. & COM. CODE ANN. § 2.315 (Vernon 1994). The particular purpose must be a particular non-ordinary purpose. *Miles v. Ford Motor Company*, 922 S.W.2d 572, 587 (Tex.App.-Texarkana 1996), *rev'd in part on other grounds*, 967 S.W.2d 377 (Tex.1998). There is no evidence that the Chandlers purchased the Aspire for some purpose other than the ordinary purpose of transportation or that they purchased the air bag as part of the Aspire for some purpose other than the ordinary purpose of its serving as part of the restraint system. The trial court did not err in granting Ford and Gene Messer Ford a summary judgment on the Chandlers' implied warranty claims.

### *Restatement of Torts (Second) Section 402A*

■■■ To impose strict liability on a manufacturer or seller of a product, a plaintiff must prove that the product is defective. A product is defective if it is "unreasonably dangerous" to the user. Section 402A; *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–89 (Tex.1967)(adopting Section 402A as Texas law). Determining whether a product is "unreasonably dangerous" depends on the category of the defect. There are three categories: design, manufacturing, and marketing. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).

■■■ Even where a product is properly designed and properly manufactured, it may be "unreasonably dangerous" because a manufacturer or seller fails to warn adequately of the inherent dangers in the product or fails to give adequate instructions as to its use. *Bristol–Myers*

*Company v. Gonzales,* 561 S.W.2d 801, 802 (Tex.1978); *Sims v. Washex Machinery Corporation,* 932 S.W.2d 559, 562 (Tex. App.-Houston [1st Dist.] 1995, no writ). In marketing defect (failure to warn) cases, a plaintiff must prove that:

> (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;
>
> (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;
>
> (3) the product must possess a marketing defect;[3]
>
> (4) the absence of a warning or instructions renders the product unreasonably dangerous to the user or consumer of the product;
>
> (5) the existence of a causal nexus between the failure to warn or instruct and the user's injury.

*Jaimes v. Fiesta Mart, Inc.,* 21 S.W.3d 301, 306 (Tex.App.-Houston [1st Dist.] 1999, pet'n den'd); *Sims v. Washex Machinery Corporation, supra* at 562; *Jobe v. Penske Truck Leasing Corp.,* 882 S.W.2d 447, 450 (Tex.App.-Dallas 1994, no writ); *USX Corporation v. Salinas,* 818 S.W.2d 473, 482–83 (Tex.App.-San Antonio 1991, writ den'd).

■ There was evidence that 1994 Aspire air bags posed an inherent risk to children 12 years of age and under. Two years after Philip was injured, Ford sent the Chandlers a letter instructing them to always place their children in the back seat. Ford also provided stickers for the Aspire's visor that warned "DEATH or SERIOUS INJURY can occur ... Children 12 and under can be killed by the air bag." These post-accident warnings were

also some evidence that Ford should have foreseen the risk of injury to Philip. See *USX Corporation v. Salinas, supra* at 484.

■ Ford and Gene Messer Ford argued only two grounds to the trial court in their request for a summary judgment against the Chandlers' marketing defect claim. They first argued that there was no duty to warn of obvious dangers or dangers that are known by the plaintiff. *USX Corporation v. Salinas, supra* at 483; *Blackwell Burner Company, Inc. v. Cerda,* 644 S.W.2d 512, 516 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.). There was conflicting evidence on whether the danger to Philip was obvious or known to the Chandlers. Chandler said that he did not know the force at which air bags deployed; he thought they were soft and acted like a pillow. Ford and Gene Messer Ford present no evidence to show that the risk of injury to a child of Philip's age and weight was common knowledge in 1994. Ford had a duty to warn the Chandlers, and we note that Ford and Gene Messer Ford do not argue this ground on appeal.

■ The other ground asserted by Ford and Gene Messer Ford to the trial court was that there was no evidence of causation. They assumed that the Aspire's warnings were inadequate, but they relied on *General Motors Corporation v. Saenz,* 873 S.W.2d 353, 357 (Tex.1993), and *Gillespie v. Century Products Company,* 936 S.W.2d 50, 52 (Tex.App.-San Antonio 1996, no writ), for an argument that the failure to provide an adequate warning could not have been the cause of Philip's injury because, if the Chandlers had followed the inadequate warning, the Chandlers would have prevented the injury to Philip. Stated another way, Ford contends that its warnings were at least suffi-

---

**3.** Although the cited cases list this as an element, it would seem that this element is simply a combination of Elements Nos. 1, 2, and 4.

ciently adequate to warn of the air bag's risk to Philip.

To prove that a failure to warn was a producing cause of an injury, a plaintiff is aided by a presumption that proper warnings would have been followed by the plaintiff had the warnings been provided. *General Motors Corporation v. Saenz,* supra at 357–59; *Magro v. Ragsdale Brothers, Inc.,* 721 S.W.2d 832, 834 (Tex.1986). *Saenz* and *Gillespie* held that the plaintiff does not benefit from this presumption if "in fact, he paid no attention to the warning given, which if followed would have prevented his injuries." *General Motors Corporation v. Saenz, supra* at 359; *Gillespie v. Century Products Company, supra* at 52. If the gross vehicle weight rating and warning had been followed in *Saenz,* the accident would have been prevented. As the *Gillespie* court observed, the father stated that, had he read the label telling him to place an infant in a rear-facing position, he would have done so.

The warning on the visor of the Chandlers' Aspire, however, stated, "An inflating air bag can seriously injure small children." Whether a reasonably prudent parent in 1994 would have interpreted "small children" to include a seven year old is a fact question. The Aspire owner's manual defined small children:

> If *small children* ride in your vehicle—this generally includes children who are four years old or younger and who weigh 40 pounds (18kg) or less—you must put them in safety seats that are made specially for children. (Emphasis added)

It can be argued that even Ford apparently thought that its warning about "small children" on the Aspire visor included only children four years of age or younger weighing 40 pounds or less. The Chandlers provided sufficient evidence to demonstrate that there is a fact question as to whether Ford's warnings to the Chandlers were adequate to inform them of the danger to Philip.

In the similar case of *Stewart v. Transit Mix Concrete & Materials Company,* 988 S.W.2d 252, 256 (Tex.App.-Texarkana 1998, pet'n den'd), there was a warning, but the question was whether someone reading the warning would have realized that it applied to "washout." The warning pointed out that cement powder or freshly mixed concrete may cause serious skin injury. Washout is concrete, containing cement, that is left over after a commercial or residential job. Stewart denied knowing what the contents of washout were or that it could burn him. There was a dispute as to whether the defendant told Stewart what washout contained. The *Stewart* court held that the evidence was sufficient to raise a fact issue on whether a warning was given that applied to washout. Ford's warnings on the Aspire's visor pose a similar fact issue of whether the warnings given applied to a seven year old.

Because Chandler admitted that he did not read the warnings that Ford provided, it can be argued that his admission negates the existence of a causal nexus between any failure to warn or to instruct adequately and the user's injury. The plaintiff in *Stewart* also did not read the written warning given about cement powder or freshly mixed concrete. The *Stewart* court addressed the policy issue:

> It may be argued that it makes no difference what product the warning addressed if Stewart never read it. If this were the case, a warning would have no more possibility of preventing an occurrence than if Stewart had been given a recipe for chocolate chip cookies. But the law and the presumptions are intended to have a policy effect, both to encourage appropriate warnings by the

manufacturer and to encourage the reading of those warnings by the consumer. To allow no warning to have the same effect as a defective warning would negate this policy. Thus, here, the issue is not a question of an adequate warning but a question of whether there was a warning applicable to washout. *Stewart v. Transit Mix Concrete & Materials Company, supra* at 256–57. Thus, the *Stewart* court concluded that Stewart would still be entitled to the presumption if he obtained a favorable determination of the fact issue on whether the warning given applied to washout.

A plaintiff in a marketing defect case may raise a fact issue on causation by presenting evidence in support of causation or by relying on a presumption of causation. In many cases, the plaintiff is aided by the presumption that proper warnings would have been followed had they been provided. Where the plaintiff fails to read the warnings actually given, *Saenz* benefits the manufacturer by its holding that the presumption does not apply if there would have been no injury had the plaintiff followed the warnings that were given. *Stewart* benefits the plaintiff by its conclusion that the presumption still will be applied if the warnings given would not have prevented the injury even if the plaintiff had read them.

The trial court erred in granting summary judgment to Ford and Gene Messer Ford on the Chandlers' Section 402A marketing defect claim.

In a conditional cross-point, Ford and Gene Messer Ford request that their cross-claims against Smith be reinstated if this court remands any of the Chandlers' claims against Ford or Gene Messer Ford. They argue that, if any of the Chandlers' claims are remanded, they are entitled to have Smith's conduct submitted to the jury for a determination of her comparative fault and her liability. Ford and Gene Messer Ford preserved their conditional cross-point by filing their own notice of appeal. We agree that their cross-claims should be reinstated.

### This Court's Ruling

The trial court's judgment is affirmed except for its judgment on the Chandlers' marketing defect claim. We reverse and remand the trial court's judgment on the marketing defect claim. We also reverse and remand the trial court's judgment dismissing the cross-claims of Ford and Gene Messer Ford against Carrie Kinkler Smith.