### In re NISSAN NORTH AMERICA, INC. ODOMETER LITIGATION.

**MDL Docket No. 3:08–md–1921.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 2, 2009.

Brandon E. Bass, John A. Day, Day & Blair, P.C., Brentwood, TN, C. Donald Amamgbo, Amamgbo & Associates, Oakland, CA, Christopher G. Hill, Durrette Bradshaw PLC, Richmond, VA, David Brian Miller, Schneider & Miller, PC., Richardson, TX, James Andrew Holmes, Law Office of James A. Holmes, PC, Henderson, TX, Jay Kutchka, Jones, Jackson & Moll, PLC, Fort Smith, AR, John R. Wylie, Donaldsonguin LLC, Paul M. Weiss, William M. Sweetnam, Freed & Weiss, LLC, Chicago, IL, Lawrence Dumzo Nwajei, Law Offices of Lawrence D. Nwajei, Taras Kick, Adam S. Gauthier, Kick Law Firm, APC, Los Angeles, CA, Marc L. Newman, The Miller Law Firm, Rochester, MI, Mitchell A. Toups, Weller, Green, McGown & Toups, Richard L. Coffman, The Coffman Law Firm, Beaumont, TX, Natalie Finkelman–Bennett, Shepherd, Finkelman, Miller & Shah, LLC,

Media, PA, Reginald Von Terrell, Terrell Law Group, Richmond, CA, Robert Stephen Woodfin, Law Office of Stephen Woodfin, Kilgore, TX, Van Bunch, Bonnet, Fairbourn, Friedman & Balint, Signal Mountain, TN, Wyatt B. Durrette, Durrette Bradshaw PLC, Richmond, VA, Samuel Kenneth Crocker, Crocker & Niarhos, Timothy G. Niarhos, The Law Office of Timothy G. Niarhos, Nashville, TN, for Plaintiffs.

E. Paul Cauley, Jr., Katherine Williams Binns, Ryan C. Brown, Sherman Vance Wittie, Stacy Leigh Blakeley, Sedgwick, Detert, Moran & Arnold, LLP, Dallas, TX, Jacqueline M. Jauregui, James L. Nelson, Sedgwick, Detert, Moran & Arnold, LLP, Los Angeles, CA, Jessalyn H. Zeigler, Bass, Berry & Sims, Robert Dale Grimes, Nashville, TN, Maureen P. Fitzgerald, Peter J. Hoffman, Eckert, Seamans, Cherin & Mellott, LLC, Philadelphia, PA, S. Thomas Wienner, Weinner & Gould, P.C., Rochester, MI, for Defendants.

### MEMORANDUM

ALETA A. TRAUGER, District Judge.

Pending before the court are motions to dismiss the plaintiffs' Consolidated Amended Class Action Complaint filed by the defendants, Nissan North America, Inc. (Docket No. 30) and Nissan Motor Co., Ltd. (Docket No. 34). Defendant Nissan North America, Inc. filed a memorandum in support of its motion, which defendant Nissan Motor Co., Ltd. joined. (Docket No. 31.) The plaintiffs have opposed the defendants' motions (Docket No. 42), the defendants have replied (Docket No. 47), and the plaintiffs have sur-replied (Docket No. 50).[1] For the reasons discussed herein, the defendants' motions to dismiss will be denied.

### BACKGROUND

The six named plaintiffs in this matter are residents of California, Texas, and Pennsylvania. The plaintiffs bring this action on behalf of themselves and all other similarly-situated individuals and entities against Nissan North America, Inc. ("NNA"), a California corporation with its principal place of business in Nashville, Tennessee, and Nissan Motor Co., Ltd. ("NML"), a Japanese corporation with its principal place of business in Tokyo, Japan.[2]

The defendants NNA and NML design, manufacture, market, sell, lease, and distribute motor vehicles under the brand names "Nissan" and "Infiniti." Each of the six named plaintiffs purchased or leased a Nissan or Infiniti vehicle between 2005 and 2007. As part of these transactions, the plaintiffs received from NNA and NML a number of warranties, including a basic express warranty against all manufacturing defects for a period of three years or thirty-six thousand miles, whichever expired first, component warranties of varying durations on a number of vehicle components,[3] and a parts warranty expressly warranting that all genuine Nissan parts purchased from and installed by a

---

1. The defendants have moved for leave to file a response to the plaintiffs sur-reply. (Docket No. 52.) Having reviewed the response to the sur-reply that the defendants seek to file and concluding that it simply reiterates arguments made previously, the defendants' motion will be denied.

2. Unless otherwise noted, the facts are drawn from the Plaintiffs' Consolidated Amended Class Action Complaint. (Docket No. 26.)

3. These component warranties include a Powertrain Warranty of sixty months or sixty thousand miles, a Federal Emission Performance Warranty of two years or twenty-four thousand miles, a Federal Emission Defect Warranty of three years or thirty-six thousand miles, and a Federal Emission Long Term Defect Warranty of ninety-six months or eighty thousand miles.

Nissan dealer would be free of defects for one year or twelve thousand miles.

The plaintiffs allege that, in connection with these transactions, NNA and NML represented that the vehicles' odometers would accurately record the number of miles traveled by the vehicles. However, according to the plaintiffs, the vehicles' odometers actually over-register the actual number of miles traveled by the vehicles. Specifically, the plaintiffs assert that NNA and NML intentionally designed, manufactured, calibrated, installed, altered, or set the odometers to inflate the mileage traveled by the vehicles by a factor of not less than two percent. The plaintiffs allege that NNA and NML accomplished this over-registration through the installation of either a computer software device or an electronic or mechanical device that altered the odometers' performance by an amount exceeding the odometer manufacturer's design tolerance. The plaintiffs further allege that NNA and NML adopted a uniform, biased odometer performance standard such that the odometers installed in all of the vehicles sold by the defendants in the United States over-registered the mileage traveled by those vehicles. As a result, the plaintiffs assert that the warranties that they purchased as part of the transactions were actually worth less than represented. The plaintiffs further assert that they, and the members of the proposed class, have been deprived of the benefit of their bargains by the installation of odometers that over-register, the diminished number of miles that a leased vehicle may be driven without penalty, and the diminished resale value of their vehicles. Finally, they assert that the defendants have reaped financial benefits from the manufacturing cost of odometers that accurately record the mileage driven, warranty repair savings, and excess mileage charges on leased vehicles.

## ANALYSIS

Initially, the six named plaintiffs in this matter filed six cases in various federal district courts. Those cases were transferred to this court for coordinated pretrial proceedings by the Judicial Panel for Multi–District Litigation, and the plaintiffs have filed a Consolidated Amended Class Action Complaint ("Complaint") alleging a variety of claims on behalf of the named plaintiffs, a nationwide class, and a number of subclasses. First, on behalf of the nationwide class, the Complaint alleges violations of the Federal Odometer Act. On behalf of two California subclasses, the Complaint alleges violations of California's unfair competition law, false advertising law, Consumer Legal Remedies Act, as well as common law claims of fraud, negligent misrepresentation, unjust enrichment, and money had and received. On behalf of a Texas subclass, the Complaint alleges unjust enrichment and breach of the implied warranty of merchantability, and on behalf of a Pennsylvania subclass, the Complaint alleges unjust enrichment.

## I. Applicable Legal Standards

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims,"

not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992.

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964–65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly,* 127 S.Ct. at 1965 n. 3.

■■■ Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964–65 (citing *Pa-*

*pasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n. 1, 122 S.Ct. 992; *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

■■■ In addition to these standards governing a motion to dismiss under Rule 12(b)(6), the Federal Rules of Civil Procedure provide a heightened pleading standard for claims involving fraud or mistake. Specifically, the rules provide that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.Civ.P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The purpose of Rule 9(b)'s particularity requirement is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988).

■■■ Rule 9(b)'s heightened pleading standard clearly applies to the plaintiffs' state law claims of fraud and negligent misrepresentation. Additionally, the defendants assert that the heightened pleading standard applies to the plaintiffs' Federal Odometer Act claims, as that statute authorizes civil actions and provides for treble damages when a person has violated the statute with "intent to defraud." 49

U.S.C. § 32710(a). The plaintiffs assert that, although Rule 9(b)'s more lenient standard for pleading a condition of the mind applies to claims under the Federal Odometer Act, in any case, the plaintiffs have satisfied both the stricter particularity standard for pleading fraud or mistake under Rule 9(b) and the more lenient standard for pleading a condition of the mind under that rule.

## II. Federal Odometer Act Claims

▮▮▮▮ In enacting the Federal Odometer Act ("FOA"), Congress found that "buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle," that "buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle," and that "an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle." 49 U.S.C. § 32701(a)(1–3). To this end, the purposes of FOA are "to prohibit tampering with motor vehicle odometers" and "to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b); *see also Owens v. Samkle Auto., Inc.*, 425 F.3d 1318, 1321 (11th Cir.2005) (noting that the findings and purposes of FOA indicate that the statute "is aimed at preventing odometer tampering and odometer fraud"). The operative provisions of the statute provide that a person may not "install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." 49 U.S.C. § 32703(1). The statute further provides that a person may not "alter, or have ... altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). A person who violates the statute "with

intent to defraud" is liable for the greater of treble damages or $1,500. 49 U.S.C. § 32710(a). Thus, there are two elements to a well-pleaded FOA claim: a violation of the statute and the intent to defraud. *Owens*, 425 F.3d at 1321.

In the Complaint, the plaintiffs first allege that the defendants "intentionally designed, manufactured, calibrated, installed, altered and/or set the automobiles' odometers (either directly and/or by using a device or devices) to inflate the mileage travelled by the vehicles by a factor of not less than two percent." (Docket No. 26 ¶ 24.) The plaintiffs further allege that the defendants achieved this odometer over-registration by "installing (or causing to be installed) a computer software device and/or an electronic or mechanical device or devices that altered the odometers' performance." (*Id.* ¶ 25.) Specifically, the plaintiffs allege that the defendants violated FOA in three regards:

(I) [By][d]esigning, manufacturing, selling, calibrating and/or installing faulty odometers in Nissan and Infiniti vehicles that register mileage greater than the mileage the vehicles were actually driven, as registered by the odometers within the designed tolerance of the manufacturer(s) of the odometers;

(ii) [By][i]nstalling or having installed a device (or devices) that cause odometers in Nissan and Infiniti vehicles to register mileage greater than the mileage the vehicles were actually driven, as registered by the odometers within the designed tolerance of the manufacturer(s) of the odometers (and advertising such vehicles for sale); and/or

(iii) [By][a]ltering or having altered the odometers in Nissan and Infiniti vehicles intending to change the mileage registered by the odometer.

(*Id.* ¶ 38.) The plaintiffs further allege that, in doing so, the defendants acted with the intent to defraud consumers and de-

prive them of the benefits of their bargains. (*Id.* ¶ 39.)

The defendants argue that the plaintiffs' FOA claims fail to satisfy the pleading requirements set out by the Supreme Court in *Twombly* in that the claims merely track the language of the FOA statute and in that the plaintiffs do not allege adequate supporting facts.[4] (Docket No. 31 at 5–14.) The defendants' criticisms about the plaintiffs' allegations focus largely on the plaintiffs' description of the alleged device that causes the odometers to over-register. The defendants argue that, to establish a FOA violation, the offending device may not consist of the odometer itself or any of the odometer's component parts but, rather, must be distinct from that instrument. The defendants further argue that the plaintiffs have failed to allege any such distinct device and have failed to allege adequate descriptive details about the device, its location, and the manner of its functioning. Finally, the defendants assert that FOA is "limited to post-manufacture tampering" and that the plaintiffs' claims relate instead to a defect in the odometer's original design or manufacture, which is not covered by the statute.

Other federal district courts, including a court presiding over one of the cases that has been consolidated here, have found that similarly-worded FOA claims withstand motions to dismiss. *See Womack v. Nissan N. Am., Inc.,* 550 F.Supp.2d 630 (E.D.Tex.2007); *Vaughn v. Am. Honda Motor Co., Ltd.,* No. 2–04–CV–142 (TJW), slip op. (E.D.Tex. Mar. 31, 2005). First, in *Womack,* which has since been consolidated in this case,[5] a federal district court in Texas denied the defendants' motion to dismiss, noting that FOA should be broadly construed to prevent odometer tampering and odometer fraud and holding that the plaintiff had "sufficiently alleged a present injury caused by Defendant's alleged use of a 'computer software device' that 'makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven.'" *Womack,* 550 F.Supp.2d at 636. The court further noted that questions of fact unsuitable for resolution on a motion to dismiss existed with respect to the degree to which the odometers over-registered as well as the "permissible magnitude" of the odometers' design tolerance. *Id.* at 637. The court went on to consider whether the plaintiff's claims satisfied the heightened pleading standard for fraud under Rule 9(b), and held that the plaintiff had satisfied Rule 9(b)'s stricter standard of pleading fraud with particularity.[6] *Id.* at 638.

*Vaughn* presented similar issues. There, the plaintiff asserted that Honda

4. The defendants further challenge the plaintiffs' alteration claims under § 32703(2), arguing that this subsection addresses the practice of "rolling back" odometers and that the plaintiffs have not alleged such conduct. (Docket No. 31 at 11–13.) The plaintiffs have made clear, however, that the import of their FOA claims is that the defendants "installed a device that altered the mileage registered by its odometers by an amount in excess of the odometer manufacturer's design tolerance" (Docket No. 42 at 9–10), and their claims will be construed as such.

5. The defendant notes that the *Womack* decision is not binding on this court and that courts sitting in consolidated multi-district actions have the power to modify or rescind orders issued by transferor courts. *See In re Grand Jury Proceedings,* 827 F.2d 868, 871 n. 3 (2d Cir.1987). Although it may not be binding, the court nevertheless finds *Womack* persuasive and declines to modify or rescind that order.

6. The court declined to rule on whether Rule 9(b)'s particularity standard or its more lenient standard for pleading a condition of the mind applies to claims under FOA. *Womack,* 550 F.Supp.2d at 638.

installed a software device causing the odometers in its cars to over-register by at least two and one-half percent. *Vaughn,* No. 2–04–CV–142 (TJW), slip op. at 3. The court noted that FOA "does not appear to exempt automobile manufacturers from liability if they otherwise violate the prohibitions of the statute." *Id.* at 4. The court rejected the defendants' argument that FOA does not prohibit the alleged conduct and held that the plaintiff's allegations that the defendants "knowingly installed a software component that would cause the odometer to display an inaccurate mileage and did so with the intent to defraud consumers out of a portion of their warranty" stated a claim under the statute. *Id.*

The defendants argue vociferously that both *Womack* and *Vaughn* should be disregarded. (Docket No. 31 at 13–14.) As the defendants correctly note, both cases were decided prior to *Twombly* and applied a standard for evaluating motions to dismiss that subsequently was rejected by the Court in *Twombly.* Indeed, they must be considered in that context. However, both remain worthy of consideration to the extent that the allegations in those cases are similar to those presented here, although it is the *Twombly* standard that will govern the outcome in this case. With this background in mind, the court holds that the allegations made by the plaintiffs

in this case are sufficient to meet the bar established by the Supreme Court in *Twombly.* It is not the job of this court, at the motion to dismiss stage, to consider whether the plaintiffs will be able to prove the alleged facts; rather, the only relevant consideration is whether, if the facts alleged are proved true, the plaintiffs would be entitled to recovery under FOA. And, indeed, they would, as the plaintiffs have alleged facts that establish both a violation of the statute, by virtue of their allegation that the defendants installed a device that caused the odometers to over-register, and that the defendants acted with the intent to defraud.[7]

Although the defendants argue that the plaintiffs must allege more details about the nature, functioning, and location of the device that allegedly causes the odometers to over-register, such "detailed factual allegations" are not required to establish an entitlement to relief, and the degree of specificity that the defendants would require far exceeds that required under *Twombly.* The plaintiffs can hardly be expected, prior to the discovery stage, to be able to articulate specific factual details about the allegedly offending device. Additionally, although the question of whether the device alleged is, in fact, distinct from the odometer itself is one of fact not appropriate for resolution here.[8] At the

7. The defendants argue that the plaintiffs' claim fails as they have merely alleged the elements of a FOA claim, rather than facts that support that claim. (Docket No. 31 at 3.) However, as discussed *supra,* the elements of a FOA claim are simply a violation of the statute and the intent to defraud. *Owens,* 425 F.3d at 1321. The plaintiffs have alleged far more than this, including the precise respect in which the defendants are alleged to have violated the FOA statute.

8. It appears that the parties dispute the definition of an odometer or the components that make up an odometer, which may explain the

defendants' insistence that the plaintiffs have not alleged a device distinct from the odometer itself. Under FOA, an odometer is defined as "an instrument for measuring and recording the distance a motor vehicle is driven." *See* 49 U.S.C. § 32702(5). According to the defendants, this definition extends to "not just the display of numbers on the dash, but necessarily includes all the components of the vehicle design necessary to both 'measure and record' mileage." (Docket No. 31 at 11.) The plaintiffs dispute the defendants' definition, arguing that it is so expansive as to encompass the entire vehicle, including "essentially every component of the vehicle so

very least, the plaintiffs have alleged the installation of a computer software, electronic, or mechanical device that causes the odometers to over-register. (Docket No. 26 ¶¶ 25.) One wonders how much more clear the plaintiffs could have been in alleging a distinct device.

The defendants argue repeatedly that the language of FOA extends only to "post-manufacture tampering" and does not regulate odometer design. (Docket No. 31 at 6–9; Docket No. 47 at 5–8.) In connection with this argument, the defendants urge this court to follow *Baxter v. Kawasaki Motors Corp.,* No. 07 C 6745, slip op. (N.D.Ill. July 17, 2008), which was decided after *Twombly,* rather than *Womack* and *Vaughn,* which were decided prior to that case. In *Baxter,* the court considered a plaintiff's claim that a motorcycle manufacturer "purposefully designed or altered the odometer of Plaintiff's vehicle . . . to inflate the mileage registered by the odometer above the actual mileage traveled by Plaintiff's vehicle." *Id.* at 3. The court dismissed the plaintiff's claim, holding that FOA only protects against "tampering with already manufactured odometers" and does not provide a cause of action where an odometer is "defectively manufactured to give inaccurate readings." *Id.* at 12–13. In doing so and in declining to follow *Womack,* the court characterized both the case before it and *Womack* as also involving defectively manufactured odometers rather than post-manufacture tampering. *Id.* By contrast, the *Baxter* court characterized *Vaughn* as involving post-manufacture tampering, in that the plaintiff in *Vaughn* alleged that a software device was "added to the odometer so as to

make an already manufactured odometer register inaccurately." *Id.* at 13. However, this court finds the distinction drawn by the *Baxter* court between its case and *Womack,* on the one hand, and *Vaughn,* on the other hand, untenable and based on a flawed reading of *Womack.* Indeed, the *Womack* plaintiff alleged the installation of a device that altered the odometer's performance, *Womack,* 550 F.Supp.2d at 632–33, and, thus, that case, like *Vaughn* and unlike *Baxter,* involved an allegation of post-manufacture tampering rather than one of defective manufacture.[9]

The defendants' argument is that the plaintiffs here allege only a defectively manufactured odometer rather than post-manufacture tampering, like the plaintiff in *Baxter.* This argument, however, completely ignores both the plaintiffs' allegation in the Complaint that the defendants installed a device causing the odometers to over-register (Docket No. 26 ¶¶ 25, 38) and the plaintiffs' statement that they "do not complain of the odometer design itself" (Docket No. 42 at 10). Thus, the plaintiffs here, like the plaintiffs in *Womack* and *Vaughn,* and unlike the plaintiff in *Baxter,* have alleged post-manufacture tampering in the form of a device installed by the defendants to cause the odometers to over-register. Therefore, not only is the logic of *Baxter* questionable, but it is also not an analogue to this case. Moreover, the defendants concede that a violation of FOA would be established if a car manufacturer "installed a tampering device apart from the odometer that affected the odometer's performance." (Docket No. 47 at 8.) Indeed, this is precisely what the plaintiffs

that no performance-altering 'device' could ever be external to the system." (Docket No. 42 at 10.)

9. The fact that *Baxter* itself involved merely an allegation of defective manufacture is underscored by the fact that, after the defen-

dant's motion to dismiss was granted, that order was vacated, and the plaintiff was permitted to file a second amended complaint alleging that "after manufacture, either a software device was added to the odometer of his motorcycle or the odometer was otherwise modified." (Docket No. 47 Ex. B.)

have alleged, and precisely why the defendants' motion to dismiss fails.

■■■ Finally, with respect to the Rule 9(b) requirement that fraud must be pleaded with particularity, this court need not determine whether Rule 9(b)'s stricter particularity standard applies to FOA claims or whether those claims fall under the rule's more lenient standard for pleading conditions of the mind, *see Womack*, 550 F.Supp.2d at 638, as the plaintiffs have satisfied both standards. The defendants' complaint that the plaintiffs' allegations are "tantamount to pleading fraud by asserting that [the defendants] lied, but failing to state what it lied about" (Docket No. 31 at 11) is inaccurate. The plaintiffs have alleged not only that the defendants lied, but also that they lied about the accuracy of the odometers, to the extent that they installed devices causing the odometers to over-register, and that they lied about the length of the warranties, to the extent that the length of those warranties was determined by the over-registering odometers. These allegations are pleaded with sufficient particularity to provide the defendants with fair notice of the substance of the plaintiffs' claims against them such that the defendants may prepare a responsive pleading and adequately defend themselves against those claims.[10]

In sum, judging the Complaint according to the standards set forth by the Supreme Court in *Twombly*, the plaintiffs have alleged a violation of FOA, and the defendants' motion to dismiss will be denied.

## III. State Law Claims

In addition to the FOA claims, the Complaint alleges a number of claims arising under the laws of the states of California, Texas, and Pennsylvania. On behalf of a subclass consisting of "[a]ll persons and entities who purchased or leased a new Nissan or Infiniti vehicle in California," the Complaint alleges violations of California's unfair competition law, Cal. Bus. & Prof.Code § 17200 *et seq.*, and California's false advertising law, Cal. Bus. & Prof. Code § 17500 *et seq.*, as well as common law claims of fraud, negligent misrepresentation, unjust enrichment/restitution, and money had and received. Additionally, on behalf of a subclass consisting of "[a]ll consumers who purchased or leased a new Nissan or Infiniti vehicle for personal, family or household purposes in California," the Complaint alleges a violation of California's Consumers Legal Remedies Act, Cal. Civ.Code § 1750 *et seq.* Finally, the Complaint alleges a claim of unjust enrichment on behalf of a Pennsylvania subclass and claims of unjust enrichment and breach of the implied warranty of merchantability on behalf of a Texas subclass.

In seeking to have these claims dismissed, the defendants first argue, as a general matter, that the California claims fail because the odometers are accurate as a matter of law and because the plaintiffs have failed to allege an injury under California law. In addition, the defendants make a number of arguments with respect to the sufficiency of each of the various state law claims. These arguments will be addressed in turn.

---

10. The defendants rely on one case in which courts dismissed a plaintiff's FOA claims for failing to plead fraud with particularity under Rule 9(b). However, that case is distinguishable in that the pleadings were far less detailed than those here. *See Robinette v.*

*Griffith*, 483 F.Supp. 28, 31 (W.D.Va.1979) (describing the complaint as containing a "bare allegation of fraud" and noting that it "alleges none of the elements of fraud or circumstances which surround defendant's violation").

### A. Odometer Accuracy as a Matter of Law (CA)

 The defendants argue that the odometers are "reasonably accurate" as a matter of law. (Docket No. 31 at 17–19.) They assert that, while the Complaint alleges that the odometers over-register by not less than two percent, such a deviation does not render the odometers inaccurate. In support of this argument, the defendants point to a handbook issued by the National Institute of Standards and Technology ("NIST") stating the completely unassailable and uncontroverted fact that "errorless value or performance of mechanical equipment is unattainable." NIST, Handbook 44, *Specifications, Tolerances and Other Technical Requirements for Weighing and Measuring Devices,* Appx. Z § 2.1 (2008) [hereinafter "NIST Handbook"]. The defendants further argue that the NIST Handbook permits a deviation of plus or minus four percent— twice the deviation alleged by the plaintiffs—for odometers used for commercial purposes. NIST Handbook § 5.53 at T.2. Additionally, the defendants note that the state of California has adopted the NIST Handbook standard of plus or minus four percent for odometers used for commercial purposes and that California law defines any measurement that meets that standard as "correct." *See* Cal. Bus. & Prof. Code §§ 12107, 12500(c). Accordingly, the defendants assert that the two percent deviation alleged by the plaintiffs cannot constitute an inaccuracy under California law.

However, the defendants' argument fails on several accounts. First, the plus or minus four percent standard embodied in the NIST Handbook and California law applies only to commercial odometers. NIST Handbook § 5.53 at A.1 (defining odometers used for commercial purposes as those "used to determine the charges for rent or hire of passenger vehicles and trucks and buses") [11]; *see also* Cal. Bus. & Prof.Code § 12500(e) (defining commercial purposes to include "the determination of the weight, measure, or count of any commodity or thing upon which determination a charge for service is based"). Although the defendants baldly assert that "[n]o standard ... declares that the 'not less than 2 percent' error alleged by the Plaintiff renders an odometer inaccurate," the fact is that, by the same token, the defendants have not demonstrated that an error rate of less than four percent renders a non-commercial odometer accurate. Likewise unpersuasive is the defendants' argument, unsupported by any statutory, regulatory, or judicial authority, that the four percent standard should be considered sufficient for non-commercial odometers simply because it is considered sufficient, in certain circumstances, for commercial odometers.

Moreover, the defendants ignore the fact that, while the NIST Handbook establishes uniform standards and tolerances in light of the fact that perfect accuracy is unattainable, it does not purport to address situations, like that alleged here, that involve not merely the question of an instrument's accuracy, but also the question of whether the defendants manipulated the odometers' accuracy to intentionally cause them to over-register by some factor. This point is well articulated by the NIST Handbook, which provides:

> [W]hen equipment is being adjusted for accuracy, either initially or following repair or official rejection, the objective should be to adjust as closely as practicable to zero error. Equipment owners should not take advantage of tolerances

---

**11.** Although the plain language of the NIST Handbook definition may suggest that it could be interpreted to apply to leased vehicles, no party has given this provision that interpretation.

by deliberately adjusting their equipment to have a value, or to give performance, at or close to the tolerance limit. Nor should the repair or service personnel bring equipment merely within tolerance range when it is possible to adjust closer to zero error.[12]

NIST Handbook, Appx. A § 2.3. The defendants respond that this portion of the handbook has not been adopted by the state of California. Although it may not be directly applicable to the facts alleged here, this portion of the handbook, at the very least, reflects the policy that an accepted tolerance should not be taken advantage of for improper purposes.

Finally, the defendants assert that intent should be irrelevant in determining an odometer's accuracy so long as it meets the four percent standard, rendering it "correct" under California law. Even assuming that the four percent standard is applicable here, this court is unconvinced that the NIST Handbook, the California standards, or California's definition of "correctness" ought to be interpreted in a manner that would have the effect of providing a safe haven for those who would take advantage of those standards for fraudulent purposes. The purpose of establishing uniform standards of measurement is to foster accuracy within the bounds of reason and technology; it is not to create a window for unaccountable fraud.

In sum, the defendants cannot claim a safe haven in the shelter of the NIST Handbook and California standards, and the plaintiffs' statutory claims will not be dismissed on the grounds that the odometers are accurate as a matter of law.

### B. Injury (CA)

In what is essentially a standing argument, the defendants argue that the Complaint does not allege injury, and thus that all of the California claims, including the statutory causes of action, fail. (Docket No. 31 at 22–24.) The plaintiffs counter that they have suffered an injury to the extent that, as a result of the defendants' actions, the odometers in their vehicles over-register the number of miles actually traveled every single time they drive their cars and that they did not get the benefit of their bargains in that they paid for warranties worth less than promised. (Docket No. 42 at 18.)

The defendants assert that fraud claims require a showing of "actual monetary loss," *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601, 609 (1995), and that a similar requirement applies to the plaintiffs' unfair competition and false advertising claims, as those statutes provide that an action may only be brought by an individual who has "suffered injury in fact and has lost money or property" as a result of a violation.[13] Cal. Bus. & Prof.Code §§ 17204

---

**12.** The defendants assert that this portion of the NIST Handbook essentially constitutes a "duty to perfect" that is inconsistent with California law, relying on a case holding that a manufacturer did not violate consumer protection statutes by selling vehicles equipped with tubular steel manifolds that were more likely to fail than more expensive cast iron manifolds. *See Bardin v. Daimlerchrysler Corp.,* 136 Cal.App.4th 1255, 39 Cal.Rptr.3d 634 (2006). However, the issue here is not simply whether the odometers were more likely to fail, but rather whether they were systematically manipulated by the defendants

so that they would all fail in a particular manner from the moment they were purchased. The plaintiffs do not wish to impose on the defendants a duty to perfect, but rather to prevent them from introducing imperfections that function to the defendants' benefit and the plaintiffs' detriment.

**13.** Prior to November 3, 2004, neither the unfair competition law nor the false advertising law required a showing of injury or damage. *See Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal.4th 223, 46 Cal.Rptr.3d 57, 138 P.3d 207, 209–10 (2006). On that

(unfair competition law), 17535 (false advertising law). The defendants assert that the same is true for the claims under the Consumer Legal Remedies Act.[14] According to the defendants, the plaintiffs have only alleged the possibility of future harm rather than an actual injury, and that, therefore, their claims must be dismissed.

The court is persuaded to the contrary, however, by the authority of *Trew v. Volvo Cars of N. Am., LLC*, No. CIV–S–05–1379 DFL PAN, 2006 WL 306904, 2006 U.S. Dist. LEXIS 4890 (E.D.Cal. Feb. 8, 2006), which involved claims and facts similar to those in this case. In *Trew*, the plaintiffs asserted claims under the unfair competition law and the Consumer Legal Remedies Act, in addition to fraud and unjust enrichment, alleging that the defendant manufactured cars with a defective device that caused the vehicles to shake, surge, or lose power. The court rejected the defendant's argument that the unfair competition claim should be dismissed in light of the amendment to the statute requiring that a plaintiff suffer injury in fact and have lost money or property. *Id.* at *5, 2006 U.S. Dist. LEXIS 4890 at *15. Instead, the court noted that the plaintiffs

were obligated to meet the standing requirements of Article III, as the case was before a federal court. *Id.* The court went on to hold that the plaintiffs had standing to pursue all of their claims, including the unfair competition claim, as they had alleged facts sufficient to establish two separate injuries: first, that "every [device] is defective and will fail," and, second, that they would not have paid as much for their vehicles had they known of the defects. *Id.* at *6, 2006 U.S. Dist. LEXIS 4890 at *17–18.

As in *Trew*, the plaintiffs here have alleged that all of the cars sold by the defendants in the United States shared a defect, although here, the plaintiffs allege that the defect—the over-registering of odometers—was the result of the defendants' intentional actions. And, again like the plaintiffs in *Trew*, these alleged facts establish two injuries. In the first instance, the plaintiffs suffer an actual, present injury when the odometers over-register, as they do each and every time the plaintiffs drive their cars. The over-registering is an injury that is manifest immediately in that, with every mile driven, the resale values on the plaintiffs' cars is low-

date, however, a proposition that had been approved by California voters to amend both statutes went into effect. *See id.,* 46 Cal. Rptr.3d 57, 138 P.3d at 210. The amendments added language to the statutes requiring a plaintiff to have "suffered injury in fact" and "lost money or property" as a result of a violation. *See* Cal. Bus. & Prof.Code §§ 17204, 17535.

14. The defendants make this argument with respect to the Consumer Legal Remedies Act, despite the fact that the statute's permissive language allows claims by "[a]ny consumer who suffers any damage." Cal. Civ.Code § 1780; *see also Kagan v. Gibraltar Sav. & Loan,* 35 Cal.3d 582, 200 Cal.Rptr. 38, 676 P.2d 1060, 1065 (1984) (declining "to equate pecuniary loss with the standing requirement," and holding that damage is established by "the infringement of any legal right

as defined by [the statute]"); *Chamberlan v. Ford Motor Co.,* 369 F.Supp.2d 1138, 1147 (N.D.Cal.2005) ("The plain language of the CLRA does not require that consumers suffer particular pecuniary losses in order to bring a CLRA claim and recover at least the statutory minimum...."). The case of *Wilens v. TD Waterhouse Group, Inc.,* 120 Cal.App.4th 746, 15 Cal.Rptr.3d 271 (2003), which is cited by the defendants, is not to the contrary. In *Wilens,* the court declined to certify a proposed class, holding that there was no basis for presuming that every member of the class suffered any damage—pecuniary or otherwise—under the Consumer Legal Remedies Act. *Id.* at 276. Here, the plaintiffs have alleged that every car sold by the defendants had an odometer that over-registered, and thus they have alleged that each suffered damage.

ered and plaintiffs who have leased their vehicles are subject to excess mileage fees.[15] In addition to this injury, the plaintiffs have successfully alleged a second injury in that they did not get the benefit of their bargain because they paid more than they otherwise would have, both for the cars themselves and for the accompanying warranties. That the plaintiffs may not have been denied particular warranty coverages on account of the odometers' over-registration is irrelevant. The fact is that the plaintiffs allege that they paid a certain price for cars with accurate odometers and for warranties that were to last a certain number of miles, but were actually provided with over-registering odometers and warranties that lasted fewer miles than they bargained for.

By comparison to *Trew*, the cases on which the defendants rely are not persuasive for a variety of reasons. First, the defendants assert that California law does not permit claims where a plaintiff only pleads speculative damages, citing the authority of *Aas v. Super. Ct.*, 24 Cal.4th 627, 101 Cal.Rptr.2d 718, 12 P.3d 1125 (2000), and *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526 (1995). Those cases, however, involved claims of negligence and breach of an implied warranty, respectively, rather than the fraud and statutory claims raised here. Additionally, and perhaps more significantly, both of those cases involved defects that were not manifest—in *Aas*, the existence of construction defects in homes built by the defendants and, in *American Suzuki*, an increased risk of rollover in a vehicles manufactured by the defendants—whereas both the over-registration of odometers and the plaintiff's overpayment in this case are manifest. Similarly, another case relied on by the defendants

likewise involved the existence of a product defect that was not manifest. *Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798, 66 Cal.Rptr.3d 543 (2007).

Additionally, in *Peterson v. Cellco Partnership*, another case relied on by the defendants, the court held that the plaintiffs had not established injury, despite their allegation that the defendant retained a portion of their insurance premium as a commission, because the plaintiffs "received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price." 164 Cal. App.4th 1583, 80 Cal.Rptr.3d 316, 322 (2008). In reaching this conclusion, the court distinguished the case of *Aron v. U–Haul Co. of Calif.*, 143 Cal.App.4th 796, 49 Cal.Rptr.3d 555 (2007), in which a plaintiff who paid excess fuel charges for a rental vehicle was found to have standing, under the unfair competition law, to challenge the defendants' imprecise system for measuring the level of fuel. The *Peterson* court noted that the plaintiff in *Aron* "could have paid less to rent the truck had. U–Haul employed an accurate measuring system" and therefore did not receive the benefit of his bargain. *Peterson*, 80 Cal. Rptr.3d at 322. Despite the defendants' reliance on *Peterson*, this case actually bears far more similarity to *Aron*, as the plaintiffs here allege that they did not receive the benefit of their bargains, both with respect to the odometers themselves and with respect to the warranties, which purport to last for a certain number of miles, but allegedly last for far fewer.

Therefore, the plaintiffs have alleged injury, and the California causes of action will not be dismissed on these grounds.

---

**15.** Although the defendants again argue that the two percent over-registration alleged by the plaintiffs is irrelevant as it falls within "all known odometer tolerances," that argument has already been addressed and rejected. *See* Section III.A. *supra*.

### C. Unfair Competition (CA)

 The court next turns to the defendants' specific arguments for dismissing the state law claims asserted in the Complaint, starting with the California unfair competition claim. That statute forbids business practices that are "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200. Unfair conduct is defined as that which offends public policy or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 719, 113 Cal. Rptr.2d 399 (2001) (quotation and citation omitted), and fraudulent conduct is defined as that which would be likely to deceive the general public, *Buller v. Sutter Health*, 160 Cal.App.4th 981, 74 Cal.Rptr.3d 47, 51 (2008). The question of whether a particular practice is deceptive, fraudulent, or unfair is generally a question of fact. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 61 Cal.Rptr.3d 221, 236 (2007) ("Whether a practice is deceptive, fraudulent or unfair is generally a question of fact 'which involves consideration of and weighing of evidence from both sides.'"); *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir.2008) (noting that motions to dismiss claims under the unfair competition law "have occasionally been upheld" in "rare situation[s]").

The defendants argue that the plaintiffs have not alleged any such unlawful, unfair, or fraudulent conduct. (Docket No. 31 at 19–20.) In making this argument, the defendants restate their assertion that the plaintiffs have only alleged that the odometers were inaccurate by two percentage points and that this degree of inaccuracy does not violate any law, regulation, or standard establishing tolerances for odom-

eters. The defendants again rely on the NIST standard adopted in California establishing a standard of plus or minus four percent for odometers used for commercial purposes.

 Once again, however, the defendants' argument fails because the defendants ignore a crucial aspect of the plaintiffs' allegation. The plaintiffs do not simply allege that the odometers were inaccurate by two percentage points, but rather that the defendants' intentional actions resulted in this inaccuracy, which functioned to benefit the defendants and harm the plaintiffs. Even if the degree of inaccuracy alleged by the plaintiffs falls within certain accepted tolerances for odometer inaccuracy,[16] it is the allegation that the defendants introduced this inaccuracy into the system that establishes conduct in violation the unfair competition law. Therefore, the unfair competition claim will not be dismissed.

### D. False Advertising (CA)

 The false advertising law prohibits advertisements that are "untrue or misleading." Cal. Bus. & Prof.Code § 17500. As with the unfair competition law, a false advertising claim is established if "members of the public are likely to be deceived." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 38 Cal. Rptr.3d 36, 48 (2006).

The defendants assert that the false advertising claim must be dismissed, again arguing that the odometers were correct as a matter of law. (Docket No. 31 at 21.) Having already dispensed with that argument repeatedly, the court finds it has no increased traction here.

**16.** Moreover, as discussed previously, there remains a question as to whether the NIST standard adopted by the state of California even has any bearing here, as that standard applies to commercial odometers and does not purport to sanction odometer tampering as long as a tampered-with odometer falls within a certain tolerance.

Additionally, the defendants argue that the plaintiffs have not alleged any particular advertisements made by the defendants that address odometer accuracy, an argument to which the plaintiffs have not responded. In the Complaint, however, the plaintiffs assert that "Defendants' advertising of their warranties is 'deceptive' in that it misrepresents the value of the warranty, the true number of miles of warranty protection Defendants will provide, and the true number of miles at which excess mileage lease charges will be incurred." (Docket No. 26 ¶ 53.) The plaintiffs have sufficiently alleged the content of the defendants' advertising with respect to the length of the warranties such that this claim will not be dismissed.

### E. Consumers Legal Remedies Act, Fraud, and Negligent Misrepresentation (CA)

The defendants assert that the plaintiffs' claims under the Consumer Legal Remedies Act ("CLRA"), as well as their fraud and negligent misrepresentation claims, must be dismissed because the plaintiffs have not alleged a specific misrepresentation. (Docket No. 31 at 21–22.)

In the Complaint, the plaintiffs assert that the defendants "impliedly represented to Plaintiffs that the vehicles' odometers would accurately record the number of miles actually traveled by the vehicles." (Docket No. 26 ¶ 23.) The plaintiffs further assert that the defendants "represented that their goods and services provide benefits that they do not provide, by representing that the goods and services are of a particular standard, quality or grade when they are not and/or by representing that the transactions conferred rights and

obligations that they do not confer." (Docket No. 26 ¶ 83.) Finally, the plaintiffs allege that the defendants represented "expressly or by implication, that the Warranties provide more miles of warranty protection than they, in fact, provide due to Defendants' tampering with the odometers, and that leased cars can be driven for more miles without incurring charges than they, in fact, can." (Docket No. 26 ¶¶ 60, 67.)

The CLRA prohibits an array of "unfair methods of competition and unfair or deceptive acts or practices" undertaken in connection with the sale or lease of goods or services. Cal. Civ.Code § 1770(a). According to the defendants, "implied representations" do not suffice to state a CLRA claim under the authority of *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006). Additionally, with respect to the plaintiffs' fraud and negligent misrepresentation claims, the defendants again assert that the plaintiffs may not state a claim on the basis of an "implied" assertion. *See Wilson v. Century 21 Great W. Realty*, 15 Cal. App.4th 298, 306, 18 Cal.Rptr.2d 779 (1993) (noting that negligent misrepresentation claim requires a "positive assertion" or "assertion" of fact, and that an " 'implied' assertion or representation is not enough.").[17]

In *Daugherty*, the plaintiffs alleged that the defendant car manufacturers failed to disclose that their cars contained defects that resulted in malfunctions after the warranties on the cars had expired. *Id.* at 121. The court held that the plaintiffs had not stated a claim under the CLRA because the plaintiffs had not identified "any

---

**17.** The defendants cite *Wilson* with respect to their argument that an implied representation is insufficient to establish a negligent misrepresentation claim. With respect to their fraud claim, they cite *Vega v. Jones, Day, Reavis &*

*Pogue,* a fraud case that cites *Wilson* positively and notes that a false representation is an element of a fraud claim. 121 Cal.App.4th 282, 17 Cal.Rptr.3d 26, 32 (2004).

representation by Honda that its automobiles had any characteristic they do not have, or are of a standard or quality they are not," noting that the cars purchased by the plaintiffs "functioned as represented" throughout their warranty periods. *Id.* at 125. Once again, the case presently before the court differs significantly from the authority relied upon by the defendants, most notably in that the defect complained of by the plaintiff in *Daugherty* did not manifest within the warranty period, hence the warranty's representations were not contrary to fact. *Id.* ("[T]he complaint does not allege any representation of fact that 'works a concealment of the true fact'.... The CLRA proscribes a concealment of characteristics or quality 'contrary to that represented,' but in Daugherty's case, no representation was made to which the alleged concealment was contrary."); *see also Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1094 (N.D.Cal.2007) (noting that *Daugherty* "allow[s] CLRA claims for certain omissions ... when the 'omission [is] contrary to a representation actually made by the defendant, or an omission of a fact the defendants was obliged to disclose.'"). In this case, in contrast to *Daugherty*, the plaintiffs have alleged that the warranties constituted a representation that the vehicles would be free of defects for a certain period of time and that the warranties themselves would last for a certain number of miles. These representations were anything but "implied." Moreover, in making these representations, the defendants made a representation alleged to be contrary to the true fact, as they were aware that the odometers would not register accurately from the moment the cars were purchased and that, as a result, that the warranties would last fewer miles than promised.

Finally, in a last-ditch effort to have these claims dismissed, the defendants once again reiterate their previously-discredited argument that the odometers' deviation was immaterial as it fell within a reasonable tolerance, as established by the NIST Handbook and standard adopted by the state of California. For the reasons that have already been discussed, that argument fails, and the plaintiffs' CLRA, fraud, and negligent misrepresentation claims will not be dismissed.

### F. Unjust Enrichment/Restitution (CA, PA, TX)

The plaintiffs allege claims of unjust enrichment under California, Texas, and Pennsylvania law.

 Under California law, unjust enrichment is properly considered not a cause of action or a remedy, but rather "a general principle, underlying various legal doctrines and remedies" that is "synonymous with restitution." *McBride v. Boughton*, 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (Ct.App.2004) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 131 Cal.Rptr.2d 347 (2003)). Generally, such an action may not be maintained where "express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal.*, 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 (Ct.App.2001). However, restitution may be awarded "in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason" or where "the defendant obtained a benefit from the plaintiff by fraud, duress, conversion or similar conduct." *McBride*, 123 Cal. App.4th at 388, 20 Cal.Rptr.3d 115.

 The law in Texas is similar to that in California, in that unjust enrichment "is not an independent cause of action but rather 'characterizes the result of a failure to make restitution of benefits either wrongfully or passively received....'" *Argyle Indep. Sch. Dist. v.*

*Wolf,* 234 S.W.3d 229, 246 (Tex.Ct.App. 2007). A party may recover under a theory of unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *Leal v. Weightman,* No. 01–03–01006–CV, 2004 WL 2251570, at *4, 2004 Tex.App. LEXIS 8991, at *12 (Ct.App. Oct. 7, 2004) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992)). The doctrine is generally only available where there is no actual contract governing the relationship between the parties. *Wolf,* 234 S.W.3d at 247; *see also Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex.2000).

■■■■■ Finally, Pennsylvania law provides that "the doctrine of unjust enrichment contemplates that '[a] person who has been unjustly enriched at the expense of another must make restitution to the other.'" *Wilson Area Sch. Dist. v. Skepton,* 586 Pa. 513, 895 A.2d 1250, 1254 (2006) (citing *Binns v. First Nat. Bank of California, Penn.,* 367 Pa. 359, 80 A.2d 768, 775 (1951)). A claim of unjust enrichment only exists "when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value." *Villoresi v. Femminella,* 856 A.2d 78, 84 (Pa.Super.Ct.2004). "Where an express contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist." *Id.*; *see also Skepton,* 895 A.2d at 1254 ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relation-

ship between parties is founded upon a written agreement or express contract....").

■■■■ The defendants first argue that the plaintiffs' unjust enrichment claims fail under the laws of all three states because the plaintiffs have not alleged that they conferred a benefit on the defendants.[18] The defendants assert that the plaintiffs failed to allege that they paid for any repairs that should have been covered by a warranty but were not as a result of the odometers over-registering, and that they failed to allege that they actually paid excess mileage charges on leased vehicles. The defendants mischaracterize the plaintiffs' allegations, however. The issue is not merely that the plaintiffs are unhappy with their bargain in retrospect; rather, the plaintiffs have alleged that they paid for warranties that were supposed to last a certain length of time but received warranties that actually lasted for a shorter period of time. The difference between the amount the plaintiffs paid for the warranties and the amount that the warranties they actually received were worth constitutes a benefit conferred upon the defendants. The laws of the states of California, Texas, and Pennsylvania are in accord on this point; by alleging that they overpaid for the warranties they received, the plaintiffs have alleged a benefit conferred on the defendants and their unjust enrichment claims will not be dismissed on these grounds.

The defendants further assert that the unjust enrichment claims may not be maintained because the relationship between the parties is founded upon an express contract—the warranties themselves—and that a claim for unjust en-

---

**18.** Although cognizant of the fact that "unjust enrichment" is not considered a cause of action under the laws of California and Texas but rather a doctrine under which restitution may be obtained, the term "unjust enrich-

ment" is used here in the interest of simplicity as an umbrella term to describe the doctrines of the states of California, Texas, and Pennsylvania that are outlined *supra.*

richment does not lie where an express contract exists. The plaintiffs note, however, that claims may be pleaded in the alternative. *See, e.g., Sheller, Ludwig & Sheller P.C. v. Equitrac,* No. 07–2310, 2008 WL 2370826, at *5, 2008 U.S. Dist. LEXIS 44691, at *13 (E.D. Pa. June 9, 2008) (noting that the rule that an unjust enrichment claim does not lie where an express contract exists means simply "that a plaintiff cannot *recover* under a theory of unjust enrichment when an express contract governs the parties' relationship" but that "[a] plaintiff may properly plead alternative theories of liability, including contract and unjust enrichment theories"); *MACTEC, Inc. v. Bechtel Jacobs Co., LLC,* No. 3:05–cv–340, 2007 WL 1891244, at *1–2, 2007 U.S. Dist. LEXIS 47137, at *3–4 (E.D.Tenn. June 28, 2007) (holding that a plaintiff may plead theories of breach of contract and unjust enrichment in the alternative). For example, in *Equitrac,* a federal district court in Pennsylvania permitted the plaintiff's unjust enrichment claim to proceed despite the existence of a lease agreement between the parties on the grounds that claims may be pleaded in the alternative. *See Equitrac,* 2008 WL 2370826, at *4–5, 2008 U.S. Dist. LEXIS 44691, at *13 (holding lease agreement did not bar unjust enrichment claim where plaintiff alleged that it made payments for a product but was not provided with the fully operational product for which it bargained).

The defendants argue that the unjust enrichment claims cannot be considered as pleaded in the alternative in this case because the validity of the warranties is not in dispute and because the plaintiffs' allegations "affirmatively negate" a claim of unjust enrichment. However, this argument ignores the gist of the plaintiffs' claims (a challenge to the warranties and the defendants' actions in connection with

those warranties), the thrust of an unjust enrichment claim (to permit a recovery when a defendant's actions wrongly result in a benefit to the defendant), and the purpose of allowing alternative pleading (to enable a plaintiff to assert a legal theory that would otherwise be affirmatively negated by another aspect of their pleading). Therefore, the plaintiffs' unjust enrichment claims will not be dismissed.

### G. Money Had and Received (CA)

 Under California law, a claim for money had and received is established where "the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" *Schultz v. Harney,* 27 Cal.App.4th 1611, 1623, 33 Cal.Rptr.2d 276 (Ct.App.1994) (citing *Pike v. Zadig,* 171 Cal. 273, 275–76, 152 P. 923 (1915)). "A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an express contract." *Utility Audit Co., Inc. v. City of Los Angeles,* 112 Cal.App.4th 950, 5 Cal.Rptr.3d 520, 527 (2003). It is irrelevant whether the original transaction was based upon an express contract, a contract implied in fact, or a quasi-contract. *Id.*

 The defendants assert that the plaintiffs' claim for money had and received fails because the defendants were not directly engaged in a transaction with the defendants, and it was the car dealers, rather than the defendants, who received money from the plaintiffs. (Docket No. 31 at 17.) However, the defendants cite no authority in support of their assertion that money must have been directly received by the defendant from the plaintiff to state a claim for money had and received. In fact, to the contrary, a claim for money had and received may be maintained "even though not founded upon allegations showing an express privity of contract between

the parties." *Rostkoff v. Cooley*, No. EDCV 05–0314–AG(OPx), 2008 U.S. Dist. LEXIS 75061, at *8 (C.D.Cal. Aug. 13, 2008). The Complaint pleads facts from which it is reasonable to conclude that some portion of the price that the plaintiffs paid for the warranties was received by the defendants, even if not directly. The Complaint therefore states a claim for money had and received.

### H. Breach of the Implied Warranty of Merchantability (TX)

 Texas law provides that, in the sale of goods, a seller impliedly warrants that those goods are merchantable. Tex. Bus. & Com.Code § 2.314; *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998). To be considered merchantable, goods must, among other criteria, "pass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," and "conform to the promises or affirmations of fact made on the container or label if any." Tex. Bus. & Com.Code § 2.314(b). The warranty is breached if goods are "defective—that is, they must be 'unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.' " *Brewer*, 966 S.W.2d at 57 (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443–44 (Tex.1989)). The defendants argue that the warranty has not been breached as the cars purchased by the plaintiffs were fit for their ordinary purpose of providing transportation. The plaintiffs, however, urge that the defendants err in focusing exclusively on the fitness of the cars as a whole, and that the proper question is, rather, the fitness of the odometers themselves.

As the defendants rightly note, the general purpose of a car is to provide transportation. *Chandler v. Gene Messer Ford*, 81 S.W.3d 493, 503 (Tex.Ct.App.2002). However, Texas courts have analyzed the merchantability of individual components of a car—which nevertheless are usually sold as part and parcel of the car—as separate from the merchantability of the car itself. *See id.* at 503 (analyzing the merchantability of an air bag); *Brewer*, 966 S.W.2d at 57 (analyzing the merchantability of seatbelts); *Vaughn v. Am. Honda Motor Co., Ltd.*, No. 2–04–CV–142 (TJW), slip op. at 4–5 (E.D.Tex. Mar. 31, 2005) (analyzing the merchantability of an odometer). For example, in *Chandler*, the plaintiffs' claims arose when their child, who was riding in the front seat of their car, was injured in an accident when the car's air bag deployed. *Chandler*, 81 S.W.3d at 497. In analyzing the plaintiffs' implied warranty claims, the court considered the ordinary purpose and merchantability of the car itself as distinct from the ordinary purpose and merchantability of the airbag. *See id.* at 503. Likewise, in *Brewer*, the court considered an implied warranty claim involving a seatbelt system and analyzed the merchantability of the seatbelt system itself.[19] *Brewer*, 966 S.W.2d at 57.

**19.** In both of these cases, the courts ultimately dismissed the plaintiffs' implied warranty claims. In *Chandler*, with respect to the car, the court concluded that its ordinary purpose is to provide transportation, and that it did so in that case. *Chandler* 81 S.W.3d at 503. With respect to the air bag, the court concluded that its ordinary purpose is to deploy in a crash and restrain a passenger, and that it also did so in that case. *Id.* Similarly, in *Brewer*, the court concluded that the seatbelt, which was marketed as an "automatic restraint system," but which, in practice, only operated manually, was not unmerchantable simply because it was "more cumbersome to use than anticipated." *Brewer*, 966 S.W.2d at 57. Regardless of the outcome of those cases, for this court's purposes, the relevant lesson to be learned is that the merchantability of the components themselves was the focus of the courts' analyses.

To support their argument that the court should not consider the merchantability of components separate from the merchantability of the car itself, the defendants rely on the case of *Strauss v. Ford Motor Co.*, 439 F.Supp.2d 680 (N.D.Tex. 2006), in which the court dismissed the plaintiff's implied warranty claim, holding that the sale of a car without the hardware required to attach the car's front license plate did not render the car unmerchantable.[20] The defendants argue that the odometers in this case are analogous to the license plate hardware in *Strauss,* in that they do not affect the basic functionality of the car itself, and that the odometers are distinguished from the restraint systems in *Chandler* and *Brewer,* as a defect in those safety systems would render a car unfit to provide transportation. However, the defendants' analogy is unpersuasive. License plate hardware is hardly so integral and common a feature as seat belts, air bags, or odometers. The purchaser of a car quite reasonably expects a car to include functioning seat belts, air bags, and odometers, thus providing an explanation for the courts' willingness to consider the merchantability of such components independently of the car itself in these cases.

This court, therefore, will follow the lead of the courts in *Chandler* and *Brewer.* The ordinary purpose of an odometer is to measure and accurately display the number of miles traveled by a vehicle. The plaintiffs here have alleged that the odometers in their cars did not do this but, rather, over-registered the number of miles traveled. Moreover, the plaintiffs have alleged that this over-registration was the result of the defendants' actions, and thus the fact that the degree of over-registration may fall within certain tolerances does not negate the plaintiffs' claim. Therefore, the plaintiffs' allegations are sufficient to establish that the odometers sold by the defendants were unmerchantable.

## CONCLUSION

For the reasons discussed herein, Nissan North America, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint for Failure to State a Claim and Nissan Motor Co., Ltd.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint for Failure to State a Claim will be denied. Additionally, the Defendants' Joint Motion for Leave to File a Response to Plaintiffs' Sur–Reply to Defendants' Motions to Dismiss will be denied.

An appropriate order will enter.

---

**20.** The defendants additionally base their argument on the language of the implied warranty statute, which provides that the warranty is implied in "a contract for [the] sale [of goods]" and that goods are only merchantable if they "pass without objection in the trade under the contract description." Tex. Bus. & Com.Code § 2.314(a-b). The defendants argue that these references to the contracted-for goods compel the conclusion that the warranty applies to the car itself rather than to a component. The defendants have not, however, provided any support for this somewhat tortured reading of the statute, nor was such an interpretation contemplated by the courts in either *Chandler* or *Brewer.*